## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CHRISTA FISCHER,** *et al.,*

   Plaintiffs,

 v.

**FEDERAL EXPRESS CORPORATION, et al.**

   Defendants.

Civil Action No. 5:19-cv-04924-JMG

## PLAINTIFFS' SUPPLEMENTAL BRIEF SUPPORTING
## CONDITIONAL CERTIFICATION

### **INTRODUCTION**

Pursuant to the Court's October 23, 2020 Order (ECF No. 46), Plaintiffs respectfully submit this Supplemental brief in support of Plaintiffs' Motion for Conditional Collective Certification (ECF No. 24). This federal court has jurisdiction over this action as a single, unified proceeding that is challenging a uniform employment policy under a federal statute that explicitly contemplates representative actions covering similarly situated employees.

Plaintiffs filed in the home state of one defendant, FedEx Ground Packaging System, Inc. (Ground). If the employees who worked for Ground were formally employed by Ground, then there would be no problem. However, the problem lies in the relationship/scheme that Defendants, Federal Express Corporation (Express) and Ground created. Defendant Ground is an employer subject to the requirements of the FLSA. Defendant Express has taken the position that it is exempt from the requirements of the FLSA under the Railway Labor Act. *Def.'s Answer*, ECF No. 27. Therefore, rather than Defendant Ground employing Security Specialists directly (because they

would be required to pay overtime under the FLSA), Defendant Express employed Security Specialists and contracted the Security Specialists' services to Defendant Ground. Defendants have created a remarkable scheme that strips Security Specialists of any FLSA protections because these Defendants cannot be sued together; under this scheme Defendants claim that Express is not subject to personal jurisdiction in Pennsylvania, and Ground is not subject to personal jurisdiction in Tennessee. There is no easy solution, for there is no one jurisdiction where both Defendants are subject to general jurisdiction. If it is not Pennsylvania, then it cannot be Tennessee for the same reasons, leaving Plaintiffs with no proper venue to bring their FLSA claims. The law cannot countenance such a result.

Nothing in the FLSA, the Constitution or the Federal Rules of Civil Procedure imposes any such limitation on a defendant-employer's jurisdiction in a federal representative action. To the contrary, a careful examination of these sources strongly reinforces the opposite conclusion: where a uniform employment policy is challenged in a federal court under a federal statute that explicitly contemplates representative actions of similarly situated employees, the claims can, and should, proceed in a single, unified proceeding.

Moreover, this discussion is premature to decide at this stage. Plaintiffs have already survived Defendants' motion to dismiss on the joint employment issue. *See Order Denying Defendant's Motion to Dismiss*, ECF No. 23. Since then, nothing has changed. The Parties have not engaged in full discovery and Defendants have obstructed Plaintiffs' efforts to discovery information outside the narrow scope of conditional certification. Therefore, a ruling on the merits of joint employment would be premature.

## ARGUMENT

### I.   PLAINTIFF HAS MET THE BURDEN REQUIRED FOR CONDITIONAL CERTIFICATION.

Under the FLSA, an action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Being similarly situated . . . means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Belt, et al. v. P.F. Chang's China Bistro, Inc.,* No. 18-cv-3831, 2020 WL 3829026 at *3 (E.D. Pa. July 8, 2020) (citations omitted). Cases are conditionally certified under the FLSA when plaintiffs demonstrate the existence of a group of "similarly situated" employees. *See* 29 U.S.C. § 216(b). Courts in the Third Circuit have adopted a two-step approach to certification of FLSA collective actions.

At the first step, Plaintiffs need only make a "modest factual showing" to "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012). The conditional certification decision is made using a "fairly lenient standard." *Belt*, 2020 WL 3829026, at *3.

Plaintiffs have more than satisfied the lenient first-stage burden of providing evidence that Defendants have a uniform and nationwide practice of misclassifying and failing to pay overtime to Security Specialists like Plaintiff Fischer. All Security Specialists were classified as salaried exempt employees, when they should have been classified as non-exempt employees entitled to overtime wages. The Court should grant Plaintiffs' motion for conditional class certification and authorize Plaintiffs to disseminate their proposed notice and approve the proposed methods of distribution to potential class members.

All of Defendants' Security Specialists have the same primary job duties, are subject to the same highly-standardized policies and practices, are paid and classified the same way, are provided similar training, and experience substantially similar employment conditions. The purpose of conditional certification is to notify potential class members that they may have claims before their claims fall victim to the running of the statute of limitations. This court has previously noted that "[a]lthough this stage is known as 'conditional certification,' it 'is not really a certification.'" *Id.* The individuals who receive the court-approved notice will only become parties once they file their written consent with the court. *Id.* "'Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process.'" *Id.* (citations omitted).

## II.     NO JURISDICTIONAL LIMITATIONS APPLY TO THIS CASE THAT MAY RESTRICT THE SCOPE OF A COLLECTIVE ACTION.

Congress enacted the FLSA's collective action mechanism to ensure uniform wage standards throughout the nation by encouraging "efficient resolution in one proceeding." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Despite this long history of national FLSA collective actions, employers like Defendants here have recently begun to argue that the Constitution prohibits federal courts from exercising specific personal jurisdiction over employers with respect to the claims of any would-be opt-in plaintiffs who worked outside the state where the federal court is located. The consequences of this claimed limitation are extraordinary. Defendants' position, if accepted, would "splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Swamy v. Title Source, Inc.*, No. 17-1175, 2017 WL 5196780 at *2 (N.D. Cal. Nov. 10, 2017).

The impetus for employers' newly proposed constitutional limitation is the Supreme Court's 2017 decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). *Bristol-Myers* held that the California state courts lacked specific personal jurisdiction over a defendant with respect to state-law personal injury claims of nonresident plaintiffs that arose entirely outside of California. *Id.* at 1782. *Bristol-Myers* broke no new constitutional ground. Rather, by its own terms, it applies "settled principles regarding specific jurisdiction." *Id.* at 1781. Nonetheless, seizing on superficial parallels, employers now insist that federal courts are powerless to exercise specific personal jurisdiction over employers with respect to the claims of any plaintiffs who worked outside the state where the federal court is located.

For the reasons explained here, employers' proposed limitation is meritless. Every shred of available evidence—the plain text of the FLSA, the legislative history, and the long-settled understanding of the FLSA and due process limitations—points toward Congress' unyielding desire to unify collective actions in a single proceeding. *See* 29 U.S.C. § 216(b); *Hoffman-La Roche*, 493 U.S. at 170.

First, the FLSA explicitly targeted employers engaged in *interstate*—as opposed to entirely localized—commerce. 29 U.S.C. §§ 203(b), 206, 207. Recognizing that "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency," courts have "consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 396 (1985) (internal citations omitted).

The FLSA permits collective actions without any geographical limitation. Congress authorized suits by aggrieved employees "for and in behalf of himself or themselves and other employees similarly situated" without any further qualification. 29 US.C. § 216(b). The statute in

no way limits claims to in-state plaintiffs. *See id.*; *Seiffert v. Qwest Corp.*, No. 18-70-GF, 2018 WL 6590836, at *3 (D. Mont. Dec. 14, 2018; *Swamy*, 2017 WL 5196780 at *2.

The legislative history is equally unequivocal. As the Supreme Court has recognized, Congress provided the collective action mechanism with two primary goals in mind: (1) lowering individual costs to vindicate rights by the pooling of resources; and (2) the efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity in one proceeding. *See Hoffman-La Roche Inc.*, 493 U.S. at 170. Testimony from the congressional debate floor describes the collective action mechanism as "a common-sense and economical method of regulation" that "puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights," thereby ensuring they "will not suffer the burden of an expensive lawsuit." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 n.16 (1945) (quoting 83 Cong. Rec. 9,264 (1938)).

The text and legislative history of the FLSA both point in the same direction: Congress implemented the collective action procedure into the FLSA to encourage efficient resolution of these claims in *one* proceeding, regardless of where the employees who opted to join the suit were located.

Defendants' proposed limitation also conflicts with settled practice and established precedent under the law. Accepting Defendants' proposed interpretation would require implicitly overturning nearly every major precedent addressing FLSA collective actions in this Circuit in which the collective action included opt-in plaintiffs who worked for an employer not subject to general jurisdiction outside the forum state. Defendants' current position necessarily embraces the astonishing position that for nearly 80 years, *no one noticed* that defendants' due-process rights

were supposedly being routinely violated.[1] That is reason enough to be extremely skeptical of employers' proposed innovation. *See Martin v. Hunter's Lessee*, 1 Wheat. 304, 326 (1816) (rejecting a proposed constitutional limitation in light of the fact that no one "ever breathed a judicial doubt on the subject…until the present occasion"); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020) ("Decades of case law show that" employers' novel limitation on federal courts' personal jurisdiction over FLSA collective actions "has not been the practice of the federal courts.").

Neither does the Constitution impose any such limitation. In federal court, personal jurisdiction is governed by the Fifth Amendment Due Process Clause, not the Fourteenth Amendment, which was at issue in *Bristol-Myers*. "Those strictures of fourteenth amendment due process analysis which attempt to prevent encroachment by one state upon the sovereignty of another do not apply with equal force to the adjudication of a federal claim in a federal court." *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 294 (3d Cir. 1985). Instead, the Fifth Amendment due-process inquiry "focus[es] more on the national interest in furthering the policies of the law(s) under which the plaintiff is suing." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 371 (3d Cir. 2002). Maintaining a single FLSA collective action in federal court implicates no federalism concerns.

The Fifth Amendment imposes "a general fairness test incorporating *International Shoe*'s requirement that 'certain minimum contacts' exist . . . 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daetwyler*, 762 F.2d at 293 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he defendant's conduct and

---

[1] In fact, Defendant Federal Express Corporation itself failed to assert this supposed Constitutional right in at least one other putative FLSA collective action. *See Def.'s Answer to Complaint* in Mitchell v. Federal Express Corporation, No. 16-cv-03172, ECF No. 16 (D. Md. Aug. 24, 2017). In its Answer, Defendant never contests personal jurisdiction of a nationwide FLSA collective action in Maryland, a state where it is not subject to general jurisdiction.

connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Due process ensures that a defendant will not be subject to jurisdiction in a state solely as a result of "random, fortuitous, or attenuated contacts." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 905 (2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Personal jurisdiction under the Fifth Amendment can exist whenever a defendant has sufficient minimum contacts with the United States as a whole. "Under the national contacts theory, the proper inquiry in determining personal jurisdiction in a case involving federal rights is one directed to totality of a defendant's contacts throughout the United States. . . The hallmark of the theory is that 'it is not the territory in which a court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part." *Daetwyler*, 762 F.2d at 293-94 (internal citations omitted). The national contacts approach makes sense in light of the fundamental difference between state and federal courts, because "all federal courts, regardless of where they sit, represent the same federal sovereign,"—the United States—"not the sovereignty of a foreign state government." *Sloan v. General Motors LLC*, 287 F.Supp.3d 840, 859 (N.D. Cal. 2018). This is appropriate here, as the Fifth Amendment due process inquiry "focus[es] more on the national interest in furthering the policies of the law(s) under which the plaintiff is suing." *Pinker*, 292 F.3d at 371.

This Court has previously determined that the Fifth Amendment cannot apply because the FLSA does not authorize nationwide service of process, so the inquiry must depend upon the Fourteenth Amendment. *See Weirbach v. Cellular Connection, LLC*, 2020 WL 4674127 (E.D. Pa. Aug. 12, 2020). However, nothing in the Federal Rules of Civil Procedure or any other source suggests that opt-in plaintiffs in an FLSA collective action must comply with service of process

requirements *at all*. Federal Rule of Civil Procedure 4 is therefore satisfied when the *named* plaintiff(s) effectuate service of process. Rule 4 contains only one operative command: "[a] summons must be served with a copy of the complaint." Fed.R.Civ.P. 4(c)(1). "Serving a summons" establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id.* 4(k)(1)(A). These provisions were fully satisfied when Plaintiff Fischer served her Complaint and summons on Defendants.

Rule 4 does not require that every opt-in plaintiff who files a consent to join the action must separately and individually satisfy Rule 4's service of process requirements. Rule 4 instead is better read to require only that named plaintiffs effectuate service of process and, under Rule 4(k)(1)(A), establish personal jurisdiction under state law. Only the named plaintiff(s) must serve the Complaint with the summons. *Id.* 4(c)(1). Opt-in plaintiffs, by contrast, simply file notices of consent to join. 29 U.S.C. § 216(b). That is because opt-in consent forms are not "complaints" under Rule 4(c)(1). *See also* Rule 7(a) (specifying complaints as "allowed pleadings," but leaving out opt-in forms). Instead, these consent forms are "written notice[s]" under Rule 5(a)(1)(E), which must be served consistent with the service requirements of Rule 5 rather than those of Rule 4. *See* Rule 5(b). Accordingly, filing a notice of consent does not independently trigger any obligation to serve (or re-serve) process or independently establish personal jurisdiction. *See Drabkin v. Gibbs & Hill*, 74 F.Supp. 758, 762 (S.D.N.Y. 1947) ("The filing of the written consent to become a party is not a prerequisite to the issuance of the summons by the Clerk of the Court under [Federal Rule of Civil Procedure Rule 4].").

These rules explain why "[i]n an FLSA collective action…there has never been a requirement that each individual opt-in plaintiff…achieve individual service of process upon the

defendant." *Hammond v. Floor and Décor Outlets of America, Inc.*, No. 19-cv-01099, 2020 WL 2473717, at *15 (M.D. Tenn. May 13, 2020). The text of Rules 4 and 5 impose no such obligation. And without any textual requirement that opt-in plaintiffs satisfy service of process, Rule 4(k)(1)(A)'s limits on effective service (including any required analysis of state law personal jurisdiction limitations) simply do not enter the picture. In FLSA collective actions, "[j]urisdiction over the defendant is obtained by the service of the summons issued by the Clerk after the filing of the complaint." *Drabkin*, 74 F. Supp. at 762. No additional steps by the opt-in plaintiffs are required.

Opt-in plaintiffs in collective actions do not stand alone in this regard. Other forms of aggregate litigation come in many shapes and sizes. The Federal Rules frequently do not require added parties to satisfy the prerequisites of service of process or personal jurisdiction. One prime example are Rule 23 class members. Absent class members are considered parties, at least for some purposes. *Devlin v. Scardelleti*, 536 U.S. 1, 9-10 (2002). But nothing in Rule 4 suggests that absent class members must individually satisfy service of process and state law personal jurisdiction requirements. *Mussat*, 953 F.3d at 447.

The absence of any independent service of process requirement for these parties was no oversight by Congress or the drafters of the Federal Rules of Civil Procedure. The personal jurisdiction analysis occurs *at the level of the suit*, and there is only one lawsuit here. *See, e.g., Aiuto v. Pub. SuperMarkets, Inc.*, 2020 WL 2039946, at *5 (N.D. Ga. Apr. 9, 2020); *Hammond*, 2020 WL 2473717, at *14. Collective actions, like their modern-day Rule 23 class-action cousins, are single lawsuits brought by named representatives. Mass tort cases, like the one proposed in *Bristol-Myers*, are an amalgamation of individual suits. This difference is significant because the personal jurisdiction analysis occurs "at the level of the suit." *Morgan v. U.S. Xpress, Inc.*, No.

3:17-cv-00085, 2018 WL 3580775, at *5 (W.D. Va. July 25, 2018). As the Court explained in *Bristol-Myers*, "the suit" must "arise[e] out of or relat[e] to the defendant's contacts with the forum." 137 S. Ct. at 1780. "The suit," in this case, is a FLSA collective action. And such suits arise out of and relate to a defendant's contacts with the forum when the named representatives' claims have the requisite connection to that forum. FLSA collective actions are a creature of federal law—and a law that explicitly contemplates collective, representative actions. None of the *Bristol-Myers* federalism concerns apply to such federal law actions. *Bristol-Myers* is best understood as prohibiting state courts from deciding state law claims that have nothing to do with the forum state.

The FLSA explicitly contemplated that these would be representative actions with plaintiffs who would have to affirmatively opt-in to join the lawsuit. Through the Portal-to-Portal Act of 1947, Congress added the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Ch. 52, § 5(a), 61 Stat. 84, 87 (codified at 29 U.S.C. § 216(b)). Congress added this provision to codify the existing practice of so-called "spurious class actions," or opt-in representative actions recognized by the contemporaneous version of Rule 23. *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012).[2]

Opt-in plaintiffs in representative litigation need not serve process in large part because they have never been understood to be required to separately establish personal jurisdiction in the first place. Because of their representative nature, collective actions do not require individualized

---

[2] Historical practice strongly supports the conclusion that opt-in plaintiffs in representative actions need not independently establish federal jurisdiction. *See Zachman v. Erwin*, 186 F. Supp. 681, 689 (S.D. Tex. 1959) ("The ability of other persons similarly situated to intervene without regard to jurisdictional limitations applicable to the original parties is the raison d'etre of the spurious class suit."); *Union Carbide & Carbide Corp. v. Nisley*, 300 F.2d 561, 588-89 (10th Cir. 1961) (spurious class actions "obviate the jurisdictional requirements" where "there are numerous persons who have claims or defenses that involve a common question of law or fact"); *Hunter v. S. Indem. Underwriters*, 47 F. Supp. 242, 243-44 (E.D. Ky. 1942) (spurious class actions allow similarly situated individuals "to participate by intervention without independent grounds of jurisdiction"); *Shipley v. Pittsburgh & Lake Erie R.R. Co.*, 70 F. Supp. 870, 974-75 (W.D. Pa. 1947); *McGrath v. Tadayasu Abo*, 186 F.2d 766, 770-71 (9th Cir. 1951).

treatment of each plaintiff.[3] Ultimately, none of the federalism concerns or traditional factors supporting due process limitations on personal jurisdiction (fairness, convenience, and state sovereignty) support dividing collective actions in the way Defendants suggest. It makes perfect sense, then, that there is nothing in the rules requiring FLSA opt-in plaintiffs to separately comply with Rule 4's service of process requirements.

*Bristol-Myers* is entirely consistent with this premise. *Bristol-Myers* engaged in the specific jurisdiction analysis on a plaintiff-by-plaintiff basis because the case "arose in the context of consolidated individual suits." *Mussat*, 953 F.3d at 446. The consolidation procedure employed by the California courts "has no analogue in the Federal Rules of Civil Procedure." *Id.* That is certainly true where the law at issue is a state law tort claim, as was the case in *Bristol-Myers*. The individualized nature of each plaintiff's suit and the extraordinary federalism concerns at issue explain why *Bristol*-Myers analyzed specific jurisdiction on a plaintiff-by-plaintiff basis. However, the same concerns are not at issue here, where a federal law explicitly provides for representative actions of similarly situated individuals.

Additionally, there is nothing random, fortuitous, or attenuated about Defendants being hauled into court in the Eastern District of Pennsylvania. Defendants are in federal court answering for violations of federal law. Defendants can appeal any adverse judgment to the United States Court of Appeals and Supreme Court. And, Defendants remain free to seek a change of venue if they believe the litigation should proceed elsewhere. *See* 28 U.S.C. §§ 1391, 1404. Defendants have not done so because there is no better venue. Instead, Defendants invoke a categorical

---

[3] "[T]he use of representative testimony to establish class-wide liability has long been accepted." *Monroe*, 860 F.3d at 408. Instead, the testimony of the representative plaintiffs "may be considered representative proof on behalf of the whole class." *Id.* at 400. Employers can hardly complaint about the burden of litigating opt-in plaintiffs' claims in any particular court when the vast majority of opt-ins will not even be required to present evidence at trial.

constitutional limitation that, if accepted, would make it impossible to bring a single collective action *anywhere*.

Specific jurisdiction requires an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State…" *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations omitted). In *Bristol-Myers*, that affiliation was absent, as most plaintiffs were not California residents, were not prescribed the drug in California, did not purchase the drug in California, did not ingest the drug in California, and were not injured by the drug in California. *Bristol-Myers*, 137 S. Ct. at 1781. But unlike the out of state plaintiffs in *Bristol-Myers*, the opt-in plaintiffs who worked for Defendants outside of Pennsylvania can point to far more. All plaintiffs, regardless of location, suffered the same harm stemming from the same unlawful policy. And all plaintiffs enjoy the same federal law statutory right to band together in a single proceeding, with one or more employees representing the rest on identical claims. Defendants' actions in each state stem from the same uniform national policy. In addition, Defendant Express (the company without general jurisdiction) contracted with Defendant Ground (the company *with* general jurisdiction) to receive the Security Specialist services that are at issue here. Therefore, there is "an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb*, 137 S. Ct. at 1780.

Absent any federalism concerns or unreasonable burden to the defendant, courts may exercise personal jurisdiction over a defendant as to the suit as a whole where doing so would be fair and convenient to the parties, promote judicial economy, and avoid piecemeal litigation. *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004); *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties."). These

same principles support the exercise of personal jurisdiction in an FLSA collective action based on an "affiliation[n] between the forum and the underlying controversy" as a whole. *Goodyear*, 564 U.S. at 918 (citation omitted). Unlike a mass tort case, which is an amalgamation of individual suits, collective actions are single, unified suits. Congress' repeated use of the singular term "action" in § 216(b) demonstrates Congress's understanding that the named plaintiffs and opt-in plaintiffs' claims jointly constitute a single *action*—or a single "constitutional case." *ESAB Grp. Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997). And in collective actions, class wide liability is established through the representative testimony of a small group of employees. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 408 (6th Cir. 2017). Defendants have a uniform and nationwide practice of misclassifying and failing to pay overtime to Security Specialists.

Despite the FLSA's intended goals, Defendant implicitly advocates for duplicative lawsuits even though the named plaintiffs, opt-in plaintiffs and the putative collective share the same job duties, are subject to the same company-wide policies, and allege the same FLSA violation of being misclassified. As Defendants would have it, instead of one nationwide collective, Plaintiffs' claims should be litigated in 50 separate states. Exercising jurisdiction would be the most fair and convenient course for the parties. It would free the non-Pennsylvania employees from the unfairness and inconvenience of having to bring new individual or state-specific collective actions, and it would spare Defendants from the burden of defending dozens of lawsuits, all of them asserting identical claims based on the same employment policy, exemptions from the FLSA and joint employer theory. Additionally, it would spare the risk of inconsistent and conflicting results depending on what state an individual worked in. This is an even greater risk because in addition to the misclassification issue, there is also a joint employment issue.

Since *Bristol-Myers* was decided, some courts have rejected the applicability of *Bristol-Myers* to FLSA collective actions. *See O'Quinn v. Trans Canada USA Servs.*, No. 19-cv-00844 at 33-37 (S.D. W.Va. June 29, 2020) (declining to extend *Bristol-Myers* to FLSA collective action context because the analysis is grounded at the level of the suit, and in FLSA collective actions, "the suit is between the named plaintiff and the defendant," and because no federalism concerns exist); *Waters v. Day & Zimmermann NPS, Inc.*, No. 19-11585, 2020 WL 2924031, at *4-5 (D. Mass. June 2, 2020) (holding that when evaluating specific jurisdiction at the level of the suit, FLSA collective actions are between the named plaintiff and defendant); *Hammond*, 2020 WL 2473717 (M.D. Tenn. May 13, 2020); *Aiuto*, 2020 WL 2039946, at *5; *Turner v. Concentrix Servs.*, No. 18-1072, 2020 WL 544705 (W.D. Ark. Feb. 3, 2020); *Hunt v. Interactive Med. Specialists, Inc.*, No. 19-13, 2019 WL 6528594 at *3 (N.D. W.Va. Dec. 4, 2019); *Saenz v. Old Dominion Freight Line, Inc.*, 2019 WL 6622840, at *5 (N.D. Ga. June 7, 2019); *Mason v. Lumber Liquidators, Inc.*, No. 17-4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019) ("This Court finds more persuasive the reasoning of those courts that have declined to apply the Supreme Court's reasoning in *Bristol-Myers* to FLSA collective actions."); *Meo v. Lane Bryant, Inc.*, No. 18-6360, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) ("As a remedial statute, Congress intended for nationwide FLSA collective actions. Applying *Bristol-Myers* to FLSA collective actions would countermand that purpose."); *Seiffert v. Qwest Corp.*, No. 18-70, 2020 WL 6590836 (D. Mo. Dec. 14, 2018) ("This Court agrees … that the Supreme Court in *Bristol-Myers* did not intend to restrict a federal court's personal jurisdiction in FLSA collective actions authorized by Congress.")); *Hospital Auth. Of Metro Gov't of Nashville v. Momenta Pharms., Inc.*, 2018 WL 6378457 (M.D. Tenn. Dec. 5, 2018); *Dennis v.* IDT Corp., 2018 WL 5631102 (ND Ga. Oct. 18,

2018); *Garcia v. Peterson*, 319 F.Supp.3d 863, 880 (S.D. Tex. 2018); *Swamy*, 2020 WL 5196780);

*Thomas v. Kellogg Co.*, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017).

Further, other courts have taken the position that this inquiry is premature at this stage, and

that it is more appropriate to address this issue in a later procedural posture. *See, e.g., Warren v.

MBI Energy Services, Inc.*, 2020 WL 5640617 (D. Colo. Sept. 22, 2020).

### III.   FEDEX EXPRESS AND FEDEX GROUND JOINTLY EMPLOY PLAINTIFFS.

When arguing in favor of applying *Bristol-Myers* to FLSA collective actions, employers

assert that doing so does not offend the FLSA because employees remain free to sue employers in

a single collective action in the employer's home state.[4] As is evidenced here, that is simply not

true. Many FLSA collective actions involve numerous defendants sued as joint employers. Such

multi-defendant cases have become more common in recent years as employers have balkanized

their operations in an attempt to minimize liability. *See* David Weil, *The Fissured Workplace: Why

Work Became So Bad for So Many and What Can Be Done to Improve It 7*, 76 (2014); Richard B.

Freeman, *The Subcontracted Labor Market*, 18 Labor and Employment Relations Association

Perspectives on Work 38, 38 (2014). As is evidenced here, unless all of the defendants are "at

home" and thus subject to general jurisdiction in the same forum, employees aggrieved by a

common unlawful practice cannot proceed in a single collective action *anywhere*.

#### A.  Legal Standard

The joint employment standard determines when more than one employer is responsible

under the FLSA because both exert sufficient influence over a worker's employment. The FLSA

defines the term "employ" to include the words "suffer or permit to work." The test for an

employment relationship under the FLSA rests on "economic reality." *New York v. Scalia*, 2020

---

[4] *See Hardney v. ABC Phones of North Carolina*, 2020 WL 948817 (D. N.J. Feb. 27, 2020) (granting defendant's motion to transfer to the district court where the defendant is headquartered as the proper venue).

WL 5370871, at *2 (S.D.N.Y. Sept. 8, 2020). This means that rather than technical concepts and isolated factors, it depends on the circumstances of the whole. *Id.*

The joint employment doctrine distinguishes between vertical and horizontal joint employment. The circumstances at issue in this case involve a potential horizontal joint employment, which is when two (or more) employers are sufficiently associated with respect to the employee so that they jointly employ. In a horizontal joint employment scenario, there is an established employment relationship between the employee and both employers. The joint employment analysis focuses on the relationship of the employers to each other.

The test for horizontal employment is codified in 29 C.F.R. § 791.2(e). This states that horizontal joint employers are "sufficiently associated" if:

> (1) there is an arrangement between them to share the employee's services;
> (2) one employer is acting directly or indirectly in the interest of the other employer in relation to the employee; *or*
> (3) they share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. Such a determination depends on all of the facts and circumstances…

29 C.F.R. § 791.2(e)(2) (emphasis added).

Under any of these three definitions, Plaintiffs were jointly employed by Defendants Express and Ground. They were ostensibly hired by and paid by Express, but performed services for both Express and Ground facilities.

## B. Christa Fischer Has an Established Employment Relationship with Both FedEx Express and FedEx Ground

Christa Fischer performed work for both Express and Ground. *See* Exhibit 1, *Anthony Wills' Dep.* 50:14- 52:21. Plaintiff Fischer's supervisor, Anthony Wills, explained that Security Specialists could be Field or Ground Security Specialists. *Id.* A Field Specialist can be assigned to both Express and Ground facilities, whereas a dedicated Ground Specialist can only be assigned

to Ground facilities. *Id*. However, Mr. Wills explained that Specialists may cover for each other depending on vacation "or other reasons," such as if there are no Field Specialists in a geographic area, so a Ground Specialist would have to work in an Express facility "temporarily." *Id.* at 52:6-12.  Mrs. Fischer worked in both Field and Ground Specialist positions during the statutory period. *Id.* 50:14-21.

### C. FedEx Express and FedEx Ground Have an Arrangement to Share Security Specialists' Services

FedEx Express and Ground meet the 29 C.F.R. § 791.2(e)(2)(i) test of joint employment, because they have an agreement to share these employees' services. FedEx Ground does not employ Security Specialists. *Id.* 145:21-146:10. FedEx Express employs all Security Specialists. *Id.* Security Specialists work in Ground and Express facilities. *Id.* 50:14-52:21.

There could be many reasons why FedEx decided to structure their business this way. One reason may be to avoid the payment of overtime. FedEx Express is alleging exemption from FLSA under Railway Labor Act. FedEx Ground is not similarly exempt from the FLSA. Therefore, if the Courts find that FedEx Express is the sole employer of Security Specialists, even if they were misclassified, they are not entitled to be paid overtime and FedEx faces no liability under the FLSA. FedEx Ground can continue to have secure warehouses, permitting Security Specialists to perform work for them, without having to pay them or worrying about being held liable for overtime wages. FedEx Express similarly can continue to permit Security Specialists to work for them without worrying about any potential liability for overtime wages.

### D. FedEx Express Acts Directly in the Interest of FedEx Ground in Relation to Security Specialists

Although it is sufficient to prove horizontal joint employment once one element of 29 C.F.R. § 791.2(e)(2) has been met, as noted above FedEx Express and Ground meet all three of

the joint employment elements. FedEx Express and Ground meet the second element of the test because FedEx Express acts directly in the interest of FedEx Ground in relation to the employment of Security Specialists. Again, FedEx Ground does not employ Security Specialists. FedEx Express employs Security Specialists, who they deploy to work at FedEx Ground hubs. When FedEx Express assigns Security Specialists to their work sites, when they instruct Security Specialists on how to perform their work at those sites, when they oversee and supervise the work Security Specialists perform at those sites, they are acting directly in the interest of FedEx Ground.

### E.  FedEx Ground and FedEx Express Share Control of Security Specialists

Finally, the third element of the horizontal joint employment test has been met because FedEx Ground and FedEx Express share control of Security Specialists. "Under this test, a person who does not technically employ the employee may be considered a 'joint employer' if that person benefits from the employee's work and 'actually exercises—directly or indirectly—one or more indicia of control' over the employee." *Kennedy v. Mountainside Pizza, Inc.*, 2020 WL 4454897 (D. Colo. May 14, 2020) (citing 29 C.F.R. § 791.2(a)(1), (3)). FedEx Express and Ground are under common control.

Furthermore, it is Plaintiffs' position that should Express and Ground be found, in this case, to be joint employers of the Plaintiffs, the jurisdictional issues disappear. Since the Court has general jurisdiction over one of the joint employers (Ground) in the case, it has proper jurisdiction over the case as a whole given the relationship of the two Defendants.

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Conditional Certification.

Dated: <u>11/20/2020</u>                                   Respectfully submitted,


                                                          */s/ George E. Swegman*
                                                          George E. Swegman, Esquire
                                                          Kelly A. Burgy, Esquire
                                                          *(Admitted Pro Hac Vice)*
                                                          The Law Offices of Peter T. Nicholl
                                                          36 South Charles Street, Suite 1700
                                                          Baltimore, MD 21201
                                                          Phone No.: (410) 244-7005
                                                          Fax No.:    (410) 244-8454
                                                          *gswegman@nichollaw.com*
                                                          *kaburgy@nichollaw.com*


                                                          */s/ Scott M. Pollins*
                                                          Scott M. Pollins, Esquire (PA Id No. 76334)
                                                          Pollins Law
                                                          303 W. Lancaster Avenue, Suite 1C
                                                          Wayne, PA 19087
                                                          Phone: 610-896-9909
                                                          Fax:    610-896-9910
                                                          *scott@pollinslaw.com*


                                                          *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this __20th__ day of November 2020, a true and correct copy of

Plaintiffs' Supplemental Brief Supporting Conditional Certification, was served via this Court's

ECF system, on the following attorneys for Defendants:

Frederick L. Douglas, Esquire *(Admitted Pro Hac Vice)*
Brandon Pettes, Esquire *(Admitted Pro Hac Vice)*
Barak J. Babcock, Esquire (#202720)
Federal Express Corporation
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN 38125
*frederick.douglas@fedex.com*
*brandon.pettes@fedex.com*
*barak.babcock@fedex.com*

*Attorneys for Defendant, Federal Express Corporation*

Benjamin J. Ferron, Esquire
FedEx Ground Package System, Inc.
1000 FedEx Drive
Moon Township, PA 15108
*benjamin.ferron@fedex.com*

*Attorney for Defendant, FedEx Ground*

/s/ *George E. Swegman*
George E. Swegman