**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| CHRISTA B. FISCHER, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:19-cv-04924-JMG |
| | : | |
| FEDERAL EXPRESS CORPORATION, *et al.,* | : | |
| Defendants. | : | |

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **December 23, 2020**

**I.      OVERVIEW**

For the better part of the last decade, Christa Fischer and Andre Saunders worked as security specialists at their respective FedEx Ground facility assignments in Pennsylvania and Maryland.  Although they are employed by FedEx Express, security specialists provide various loss-prevention and site monitoring services at FedEx Ground locations pursuant to a Professional Services Agreement.  Ms. Fischer and Mr. Saunders allege that, during their time as security specialists, they regularly worked more than 40 hours a week.  However, because FedEx Express classified them as salaried employees who were exempt from overtime pay requirements, they were not paid for those extra hours worked.  As a result, Ms. Fischer and Mr. Saunders brought suit alleging that, by misclassifying security specialists as exempt employees, FedEx Express failed to pay them proper overtime wages in violation of the Fair Labor Standards Act.

Before the Court is Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice.  Under the Fair Labor Standards Act, employees alleging a breach of the Act's provisions by their employer may bring suit on behalf of themselves and any other

similarly situated employees.  This "collective action" mechanism enables plaintiffs to vindicate their rights under the Act at lower cost to each individual and promotes judicial economy by consolidating each employee's claim into a single proceeding.  Ms. Fischer and Mr. Saunders seek conditional certification of a nationwide collective comprised of all security specialists employed by FedEx Express and FedEx Ground who were improperly classified as overtime exempt.  However, district courts disagree as to whether the Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*[1] precludes the exercise of personal jurisdiction over opt-in plaintiffs alleging violations that occurred outside of the state. For the reasons set forth below, the Court will grant conditional certification of Plaintiffs' proposed collective, but will limit its scope to security specialists who worked for FedEx Express in Pennsylvania.  Therefore, Plaintiffs' Motion is granted in part.

## II.      FACTUAL BACKGROUND

### a.      Allegations

Defendants Federal Express Corporation (FedEx Express) and FedEx Ground Package Systems, Inc. (FedEx Ground) operate in the package delivery industry nationwide.  FedEx Express is a federally certified air carrier that operates airline hubs throughout the United States. Defs.' Resp. 2, ECF No. 30.  FedEx Ground is a separate business entity which is a federally registered motor carrier engaged in business and residential ground package pickup and delivery services.  *Id.*  FedEx Express provides security services under a Professional Services Agreement to its parent company, FedEx Corporation, as well as several subsidiaries including FedEx Ground.  *Id.*  Pursuant to the agreement, FedEx Ground pays a contractor's fee for the security services provided by security specialists.  *Id.*

---

[1] 137 S.Ct. 1773 (2017).

FedEx Express hired Plaintiff Christa Fischer as a part-time Courier on August 22, 2007 and promoted her to the position of Security Specialist III on November 16, 2009.  Answer ¶ 26, ECF No. 27.  Ms. Fischer was later promoted to Senior Security Specialist in 2011, a position she held until July 2019.  Compl. ¶ 12, ECF No. 1; Answer ¶ 34.  FedEx Express hired Plaintiff Andre Saunders in 2011 as a Security Specialist I and promoted him to Senior Security Specialist in 2013.  Pls.' Mot., Ex. 2 ¶ 5-6.  According to Plaintiffs, the primary duties of security specialists are observing and reporting on the security processes at their assigned locations, in addition to investigating possible instances of theft, pilfering, vandalism, and other similar occurrences.  Pls.' Mot. 3.

During the relevant period, Ms. Fischer and Mr. Saunders were "dedicated" FedEx Ground security specialists.  Defs.' Resp., Attach. 2 ¶ 5.  As a result, they were assigned to and responsible for only FedEx Ground facilities.  *Id.*  Not all security specialists are FedEx Ground dedicated, since some may be responsible for FedEx Express facilities as well.  Defs.' Resp., Attach. 2 ¶ 6.  In her final thirteen months of employment, Ms. Fischer was assigned to two FedEx Ground locations in Pennsylvania, one in Lewisberry and the other in Williamsport.  *Id.* at ¶ 6.  From 2013 to 2019, Mr. Saunders was assigned to three FedEx Ground locations in Maryland, one in Dundalk and two in Beltsville.  Pls.' Mot., Ex. 2 ¶ 6.

Plaintiffs allege that they were regularly required to work more than 40 hours a week due to understaffing and the workload requirements of their jobs.  Pls.' Mot. 3.  In particular, Plaintiffs contend that their "on-call" duties required them to work evenings and weekends outside of their regular work schedules.  *Id.*  Because they were classified as salaried employees exempt from FLSA overtime pay requirements, Plaintiffs claim that they were never compensated for their overtime work.  *Id.* at 4.  Plaintiffs assert that by misclassifying security

specialists as exempt employees, Defendants evaded paying proper overtime wages to Plaintiffs and other similarly situated employees in violation of the Fair Labor Standards Act. *Id.*

Defendants counter that, as exempt employees, security specialists may work outside of normal business hours without being entitled to overtime compensation. Defs.' Resp. 4. However, Defendants argue, security specialists do not have a defined 40-hour workweek, nor are they required to work evenings or weekends. *Id.* Defendants claim that specialists set their own schedules and make individual determinations concerning the focus of their security efforts. *Id.* They likewise assert that FedEx Express has no on-call policy. *Id.* at 4-5. Finally, Defendants maintain that they do not have a policy of understaffing specialists. *Id.*

### b.  Procedural History

Ms. Fischer filed her Complaint in this action on October 22, 2019 (ECF No. 1).[2] On December 21, 2019, Mr. Saunders filed a notice of consent to become a party plaintiff (ECF No. 12). Ms. Fischer filed a Motion for Conditional Certification on May 15, 2020 (ECF No. 24). Defendants' filed their Response in Opposition on July 1, 2020 (ECF No. 30). Plaintiffs filed a Reply to Defendants' Response on July 21, 2020 (ECF No. 34) and Defendants filed a Sur-Reply in Opposition on July 29, 2020 (ECF No. 38). Following a status conference on October 22, 2020, the Court ordered the Parties to file supplemental briefs providing additional arguments concerning conditional certification, jurisdictional limitations that may apply thereto, and the possible joint employer relationship between Defendants (ECF No. 46). The Parties each filed their supplemental briefs on November 20, 2020 (ECF Nos. 48, 49).

## III.  LEGAL STANDARD

The Fair Labor Standards Act (FLSA) "establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp.*

---

[2] This case was reassigned to this Court on March 2, 2020 (ECF No. 17).

*v. Symczyk*, 569 U.S. 66, 69 (2013).  Under the FLSA's collective action mechanism, an employee alleging that their employer violated these provisions may bring an action "on behalf of himself…and other employees similarly situated" provided that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b). This means that a collective action relies on the participation of opt-in plaintiffs who must affirmatively join the action by filing written notice with the court.  *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016).  Collective actions enable plaintiffs to vindicate their rights under the FLSA at lower cost to each individual and promote judicial economy by resolving common issues arising from the same activity in the same proceeding. *Id.* at 223.

The Third Circuit has adopted a two-step process in certifying collective actions.  *See Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017); *Zavala v. Walmart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).  During the first stage, known as conditional certification, the court "makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011).  Here, plaintiffs need only make a "modest factual showing" that the putative class members are similarly situated. *Karlo*, 849 F.3d at 85 (quoting *Halle*, 842 F.3d at 223).  This requires evidence "beyond pure speculation" demonstrating a factual nexus between the manner in which an employer's policy affected the named plaintiff and other members of the collective.  *Symczyk*, 656 F.3d at 193 (citing *Smith v. Sovereign Bancorp, Inc.*, No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003)).  This is a lenient standard given the minimal evidence available at the early

stages of litigation.  *Viscomi v. Diner*, No. 13-4720, 2016 WL 1255713, at *3 (E.D. Pa. March

31, 2016).

The lone consequence of conditional certification is the dissemination of court-

sanctioned notice to potential members of the collective.  *Halle*, 842 F.3d at 224.  Once

conditional certification is granted, the court may approve notice and consent forms to be sent to

putative class members which advise them of their opportunity to participate in the collective

action.  *Id.* at 225.  The parties then proceed to the next phase of discovery wherein the named

plaintiffs may seek contact information concerning other potential opt-in plaintiffs and the

parties further assess whether said plaintiffs are "similarly situated."  *Id.* at 226-27.  At the

conclusion of discovery, the parties move to final certification, which is triggered either by the

plaintiff's motion for final certification, the defendant's motion for decertification, or both.

*Camesi v. University of Pittsburgh Medical Center*, 729 F.3d 239, 243 (3d Cir. 2013).  It is at

this stage that the Court must engage in a more exacting inquiry and the plaintiffs must satisfy a

higher burden to show that the employees are in fact similarly situated.  *Karlo*, 849 F.3d at 85.

## IV.    ANALYSIS

### a.    Conditional Certification

Plaintiffs seek conditional certification of an FLSA collective consisting of any

individual employed by FedEx Express or FedEx Ground as a Security Specialist II, Security

Specialist III, or Senior Security Specialist within the past three years that did not receive proper

overtime compensation for hours worked over 40 per workweek.  *See* Pls.' Mot., Ex. 4.  The

Court finds that, while it is a close call, Plaintiffs have made a modest factual showing that they

and other putative class members are similarly situated.  They have therefore satisfied the

requirements for conditional certification.  However, Plaintiffs' proposed collective is subject to

the strictures of personal jurisdiction and must be conditionally certified in a more limited form than proposed by Plaintiffs.  *See infra* Section III.B.

In order to satisfy the "modest factual showing" standard, plaintiffs must provide evidence that putative class members were collectively "the victims of a single decision, policy, or plan."  *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 (3d Cir. 2007).  This burden can be met when the plaintiff shows that they and other similarly situated employees performed the same job duties, were paid in the same manner, and advance claims based on the same allegedly illegal activities.  *See, e.g.*, *Garcia v. Vertical Screen, Inc.*, 387 F. Supp.3d 598, 605 (E.D. Pa. 2019).  While this is a lenient standard, mere allegations in the complaint are not sufficient to make a modest factual showing.  *Drummond v. Herr Foods, Inc.*, No. 13-cv-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015).  The plaintiff must provide additional factual support, such as declarations, affidavits, deposition testimony, or other supporting documents.  *Id.*

Here, Plaintiffs allege that they and other putative class members performed similar duties, worked similar schedules, and were subject to the same common pay policies implemented by Defendants.  Pls.' Mot. 8-9.  According to Plaintiffs, security specialists were charged with monitoring the sorting of packages and deliveries by drivers.  *Id.*  Plaintiffs also claim that since they were required to quickly respond to incidents of theft, vandalism, or other legal violations, they were essentially on call at all times.  *Id.*  Consequently, security specialists often worked in excess of 40 hours a week, including weeknights and weekends.  *Id.*  Security specialists were all considered salaried employees and classified as overtime exempt.  *Id.*  Plaintiffs and other similarly situated employees were therefore not paid additional wages for any overtime hours they worked.  *Id.*

In support of these allegations, Plaintiffs have submitted sworn declarations describing their job duties, schedules, and FedEx Express pay policies.  Pls.' Mot., Ex. 1-2.  Plaintiffs attest

to having personal knowledge that security specialists in other locations had the same duties, worked similar schedules, and were subject to the same employment classification. Pls.' Mot., Exs. 1-2; Pls.' Reply, Exs. A-B. Courts in this district have held that sworn statements attesting to personal knowledge that plaintiffs and other coworkers were subjected to the same policies and practices satisfy the modest factual showing standard. *See, e.g.*, *Garcia*, 387 F. Supp. 3d at 615. Plaintiffs also submitted "workgroup" conference call notes from the last three years showing that employees were expected to work some evenings and weekends, in addition to responding to communications outside of work hours.[3] Pls.' Reply, Exs. E-I. This tends to show that Defendants were aware of the overtime hours worked by Plaintiffs and other putative class members, thereby further bolstering Plaintiffs' modest factual showing. *See Garcia v. Nunn*, No. 13-6316, 2016 WL 1169560, at *4 (E.D. Pa. Mar. 25, 2016).

In response, Defendants offer a litany of arguments challenging the adequacy of Plaintiffs' evidence and the merits of their claims. Defendants argue that Plaintiffs have offered an insufficient quantum of proof and that the evidence provided lacks reliability. Defs.' Resp. 6-7. Defendants also assert that Plaintiffs failed to offer any indication of their specific knowledge of other similarly situated individuals. *Id.* at 12-13. Finally, Defendants argue that Ms. Fischer challenges her individual treatment instead of a company-wide policy, thereby necessitating an individualized inquiry unsuited for a collective action. *Id.* at 8-9.

Defendants' arguments are premature at this stage. The Court need not conclusively determine the viability of an FLSA collective during conditional certification. *Weirbach v. Cellular Connection, LLC*, No. 5:19-cv-05310, 2020 WL 4674127, at *2 (E.D. Pa. Aug. 12, 2020). In fact, the Court should not evaluate the merits of the case, consider the weight of the

---

[3] Plaintiffs' additional notes from 2013 and 2016 were not considered since they refer to events that occurred outside of the relevant time period.

evidence, or resolve factual disputes until final certification. *Id.* Conditional certification only requires a "review of the pleadings and affidavits of the parties to decide if the proposed class consists of similarly situated employees." *Wright v. Lehigh Valley Hospital*, No. 10-431, 2010 WL 3363992, at *2 (E.D. Pa. Aug. 24, 2010). Arguments concerning the factual basis of a plaintiff's allegations "address the merits of the plaintiff's claims, not the commonality of the alleged policies." *Viscomi*, 2016 WL 1255713, at *5. Likewise, courts should defer disputes regarding individual members and their effect on the case's suitability for collective action until final certification. *Weirbach*, 2020 WL 4674127, at *2. Defendants will have the opportunity to challenge the merits of Plaintiffs' arguments at that time.

     **b.**    **Scope of the Collective**

          **1.**    **Personal Jurisdiction and Applicable Law**

In opposing Plaintiffs' Motion, Defendants argue that if the Court grants conditional certification, it lacks personal jurisdiction over the claims asserted by security specialists who work outside of the state. Defs' Suppl. Br. 6. As a result, any conditional certification by the Court should be limited to claims by plaintiffs employed in Pennsylvania. *Id.* Plaintiffs counter that Defendants' contentions are without merit. Pls.' Suppl. Br. 5. They argue that the FLSA contemplates unified collective actions unconstrained by any geographic limitations. *Id.* According to Plaintiffs, holding otherwise would "splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employee's rights." *Id.* at 4 (quoting *Swamy v. Title Source, Inc.*, No. 17-1175, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017)).

Some courts have taken the position that a jurisdictional inquiry at the conditional certification stage is premature. *See, e.g.*, *Warren v. MBI Energy Services, Inc.*, No. 1:19-cv-00800, 2020 WL 5640617 (D. Colo. Sept. 22, 2020). The Court disagrees. Conditional

certification is a district court's exercise of its discretionary power to facilitate sending notice to potential class members. *Symczyk*, 656 F.3d at 189. Authorizing notice to individuals who ultimately could not be included in the collective "would only sow confusion" and subject the parties to unnecessary expense and effort. *Weirbach*, 2020 WL 4674127, at *2. Therefore, the Court should decide this issue during conditional certification.

Absent consent, a federal court must have statutory authorization to serve process on a defendant before it may exercise personal jurisdiction over them. *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Since the FLSA does not authorize nationwide service of process, service in this case is only effective to the extent that Pennsylvania state courts may exercise jurisdiction over a given defendant. *See* Fed. R. Civ. P. 4(k).[4] Under Pennsylvania's long arm statute, a court may exercise jurisdiction to the fullest extent permitted by the Fourteenth Amendment's Due Process Clause. *See* 42 Pa. C.S.A. § 5322(b). As a result, the sole question becomes whether the Court may exercise jurisdiction pursuant to the Fourteenth Amendment.

The touchstone inquiry of this jurisdictional analysis concerns the defendant's connection to the forum state. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). Under the Fourteenth Amendment, this relationship can manifest in the form of general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court has general jurisdiction over a corporate entity that is incorporated in, or maintains its principal place of business in, the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). Continuous corporate activity alone "is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *International Shoe Co. v.*

---

[4] Absent joinder or authorization by federal statute, "[s]erving a summons…establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

*Washington*, 326 U.S. 310, 318 (1945).  Therefore, a court may only exercise general

jurisdiction over a corporation where it may be "fairly regarded as at home."  *Goodyear*, 564

U.S. at 924.  A court with general jurisdiction over a defendant may hear any claim against

them, including those that arise from activities that occurred outside of the forum state.  *Id.*

A court lacking general jurisdiction may nevertheless exercise specific jurisdiction over

a defendant if the defendant's contacts with the forum state are the basis of the underlying suit.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).  In this scenario, the defendant

must have "purposely directed his activities at the forum."  *O'Connor v. Sandy Lane Hotel Co.,*

*Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King*, 471 U.S. at 472).  Likewise, the

litigation must "arise out of or relate to" those activities.  *Helicopteros Nacionales de Columbia,*

*S.A. v. Hall*, 466 U.S. 408, 414 (1984).  In other words, specific personal jurisdiction only

allows the court to hear claims against a defendant that arise from the defendant's activities in

the state where the case is heard.  *Goodyear*, 564 U.S. at 919.

Within the context of FLSA collective actions, district courts differ on whether they may

exercise specific personal jurisdiction over claims by nonresident opt-in plaintiffs based on out-

of-state conduct.  The catalyst for this split is the Supreme Court's 2017 decision in *Bristol-*

*Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773 (2017)

("*BMS* ").  In *BMS*, a group of California residents and nonresidents joined in filing multiple

products liability lawsuits in California state court alleging that an anticoagulant drug damaged

their health.  137 S. Ct. at 1778.  The manufacturer of the drug, Bristol-Myers Squibb, was

incorporated in Delaware, headquartered in New York, and engaged in business activities in

several jurisdictions, including California.  *Id.* at 1777.  Although they allegedly suffered the

same harm as California residents, the nonresident plaintiffs neither claimed to have purchased

the drug through any California source, nor to have suffered any injury from the drug in

California.  *Id.*  at 1778.  Finding no connection between the nonresident plaintiff's claims and California, the Court held that California courts lacked specific personal jurisdiction over the defendants with respect to nonresident claims that arose entirely outside of the state.  *Id.* at 1782-83.

Many courts have applied the Court's holding in *BMS* to FLSA collective action cases, concluding that, like the out-of-state plaintiffs in *BMS*, nonresident opt-in plaintiffs under the FLSA are parties to the case who join with in-state plaintiffs to pursue claims arising from similar conduct that occurred outside of the forum state.  *See, e.g.*, *Weirbach*, 2020 WL 4674127, at *4; *McNutt v. Swift Transportation Co. of Arizona, LLC*, No. C18-5668, 2020 WL 3819239, at *8 (W.D. Wash. July 7, 2020); *White v. Steak N Shake Inc.*, No. 4:20-cv-323, 2020 WL 1703938, at *5 (E.D. Mo. Apr. 8, 2020); *Roy v. FedEx Ground Package System, Inc.*, 353 F. Supp. 3d 43, 59-60 (D. Mass. 2018); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018).  Pursuant to this reasoning, these courts have held that they lacked specific personal jurisdiction over the claims of nonresident opt-in plaintiffs since they bore no relationship to the defendant's activities in the state.  *Weirbach*, 2020 WL 4674127, at *4.  Plaintiffs urge the Court to reject this approach, and instead hold that FLSA collective actions are more analogous to other forms of aggregate litigation, such as Rule 23 class action lawsuits.  Pls.' Suppl. Br. 10; *see also Waters v. Day & Zimmerman NPS, Inc.*, 464 F. Supp. 3d 455, 461 (D. Mass. 2020).  This interpretation draws a distinction between FLSA collective actions and amalgamated mass tort lawsuits, reasoning that the jurisdictional inquiry in FLSA collective actions should focus solely on the defendant's activities in the forum state as they relate to the collective's named representative.  *See Warren,* 2020 WL 5640617 at *6.  As a result, courts need not establish personal jurisdiction over the claims of each individual opt-in

plaintiff, but rather the suit as a whole.  *Hammond v. Floor and Décor Outlets of America, Inc.*, No. 19-cv-01099, 2020 WL 2473717, at *15 (M.D. Tenn. May 13, 2020).

Plaintiff's interpretation is inconsistent with the plain text of the FLSA and case law within the Third Circuit.  The FLSA states in relevant part that "no employee shall be a *party* plaintiff to any such action unless he gives his consent in writing to become such a *party* and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b) (emphasis added).  This "opt-in" requirement "is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23."  *Halle*, 842 F.3d at 225 (citing *DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003)).  In stark contrast to the "opt-out" provisions of Rule 23 class actions, Section 216(b) of the FLSA is a rule of joinder. *Roy*, 353 F. Supp. 3d at 58-59.  "This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not."  *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 123 n. 1 (3d Cir. 2018) (quoting *Halle*, 842 F.3d at 225).   Unlike absent Rule 23 class members represented by a single plaintiff, opt-in plaintiffs in FLSA collective actions each have status as individual parties.  *Weirbach*, 2020 WL 4674127, at *5 (citing *Reinig*, 353 F. Supp. 3d at 123).  Since specific jurisdiction "depends on the relationship between the claims and contacts," each of these party's claims must be assessed individually.  *See Vizant Technologies, LLC v. Whitchurch*, 97 F. Supp. 3d 618, 628 (E.D. Pa. 2015) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

In *BMS*, the Court's inquiry centered on whether individual nonresident plaintiffs could assert a claim alleging the same injury as individual in-state plaintiffs, even though their claims resulted from actions that took place outside of the forum state.  137 S. Ct. at 1778.  Like the plaintiffs in *BMS*, collective action opt-in plaintiffs are individual parties that join together and allege the same harm against the same defendant.  In many collective action cases, including

this one, out-of-state plaintiffs file their claims alongside in-state plaintiffs, even though their claims arose outside of the state.  These parties are not passively represented by a single named plaintiff.  In fact, "the existence of a collective action depends upon the *affirmative participation* of opt-in plaintiffs."  *Halle*, 842 F.3d 215, 224 (3d Cir. 2016) (emphasis added).  FLSA opt-in plaintiffs are no different than the plaintiffs in *BMS*.  Therefore, their claims are subject to the same jurisdictional limitations.

Plaintiffs argue that *BMS* is inapposite because the Court's jurisdictional analysis was rooted in the Due Process Clause of the Fourteenth Amendment, whereas the applicable standard in this case is the Due Process Clause of the Fifth Amendment.  Pls.' Suppl. Br. 7.  In federal question cases brought in federal court, Plaintiffs argue, personal jurisdiction is governed by the Fifth Amendment, under which jurisdiction exists "whenever a defendant has sufficient minimum contacts with the United States as a whole."  *Id.* at 8.  Plaintiffs suggest that this "national contacts" approach is appropriate here since FLSA cases do not implicate the same federalism concerns as cases based on state law.  *Id.* at 7.  Unfortunately for Plaintiffs, their reasoning does not hold water.

In support of their argument, Plaintiffs rely on the court's dictum in *Max Daetwyler Corp. v. R. Meyer* concerning the rationale for applying the "national contacts" standard, which the court ultimately rejected.  762 F.2d 290, 294-97 (3d Cir. 1985).  The plaintiff's argument in *Daetwyler* relied on the principle that the "strictures of the Fourteenth Amendment due process analysis which attempt to prevent encroachment by one state upon the sovereignty of another do not apply with equal force to the adjudication of federal claims in federal court."  *Id.* at 294.  Notwithstanding this notion of parallel state and federal due process standards, the court reasoned that the Fifth Amendment due process inquiry still must "consider the remaining elements of the minimum contacts doctrine."  *Id.* at 295.  In conjunction with establishing this

"constitutionally sufficient relationship between the defendant and the forum," the assertion of personal jurisdiction requires notice to the defendant predicated on a legislative grant of authority. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1556 (2017); *Omni Capital*, 484 U.S at 104, 110. Absent federal statutory authorization, Federal Rule of Civil Procedure 4(e) "adopts an incorporative approach requiring that both the assertion of jurisdiction and the service of process be gauged by state amenability standards." *Daetwyler*, 762 F.2d at 295. This in turn "imposes similar Fourteenth Amendment due process restrictions on the jurisdictional reach of courts hearing nondiversity cases."[5] *Id.* at 296.

Plaintiffs further contend that applying the jurisdictional limitations set forth in *BMS* to collective action cases would frustrate the underlying purpose of the FLSA. Pls.' Suppl. Br. 5-6. They argue that the ensuing geographic restrictions would undermine Congress's goal of efficiently resolving common questions of law and fact in a single proceeding. *Id.* at 6. This argument ignores the fact that a territorial limitation would not prevent plaintiffs from bringing collective action lawsuits under the FLSA in complete harmony with congressional intent. If Congress had wanted to subject employers to collective action suits in any state where they had employees, it would have provided for nationwide service of process in the FLSA. *Weirbach*, 2020 WL 4674127, at *5 (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996)). Instead, plaintiffs seeking certification of a nationwide collective must file suit where the defendant is "essentially at home" so that the court may exercise general jurisdiction over the claims of both in-state and out-of-state plaintiffs alike. *See BMS*, 137 S. Ct. at 1783.

---

[5] The court goes on to explain that even though "other courts have generally acknowledged the logic of inquiry into a defendant's contacts with the United States when an action is based upon a federally created right, they reason [that] they must have a federal rule or statute authorizing nationwide…service of process before the national contacts theory can be applied." *Daetwyler*, 762 F.2d at 296-97.

### 2.       Joint Employment and General Personal Jurisdiction

Plaintiffs argue that, during the relevant period, FedEx Ground was their joint employer along with FedEx Express.  Pls.' Suppl. Br. 19.  As a joint employer, FedEx Ground would be jointly and severally liable for any FLSA violations committed by FedEx Express, and vice versa.  *Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 148 (3d Cir. 2014).  While FedEx Ground is incorporated in Delaware, it maintains its principle place of business in Pittsburgh, Pennsylvania.  *See* Answer 2.  Plaintiffs reason that since FedEx Ground is "essentially at home" in this forum, the Court would have general jurisdiction over any claims against it, thereby warranting conditional certification of a nationwide collective. [6]  *Id.* at 19.

FedEx Express does not deny that it was Plaintiffs' employer during the relevant period.  *See* Defs.' Reply 3.  However, Defendants contend that there was no joint employment relationship between FedEx Express and FedEx Ground.  Defs.' Suppl. Br. 8.  Regardless, Defendants assert that joint employer liability is an insufficient basis for asserting general jurisdiction over claims against FedEx Ground.  Defs.' Sur-Reply 5.  Before assessing any potential jurisdictional implications of a joint employer relationship, the Court will first determine whether FedEx Express and FedEx Ground were in fact Plaintiffs' joint employers.[7]

In order to determine the existence or nonexistence of a joint employment relationship, courts in the Third Circuit consider: (1) the alleged employer's authority to hire and fire the employees in question; (2) the alleged employer's authority to promulgate rules and

---

[6] Plaintiffs also argue that classifying FedEx Express as Plaintiffs' sole employer would allow Defendants to escape liability by later alleging an exemption from the FLSA.  Pls.' Suppl. Br. 18.  This contention speaks to the ultimate issue of this case: whether Defendants violated the FLSA by failing to pay Plaintiffs overtime wages.  This is not an appropriate consideration at the conditional certification stage, since the Court's only task is to render a preliminary determination as to "whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff."  *Symczyk*, 656 F.3d at 192.

[7] Although courts may defer consideration of the joint employment question until final certification, *see, e.g.*, *Gibbs v. MLK Express Servs., LLC*, No. 2:18-cv-434, 2019 WL 2635746, at *9 (M.D. Fla. June 17, 2019), the Parties' contentions concerning joint employer liability as a basis for conditionally certifying a nationwide collective necessitates resolving the issue at this stage.

assignments, as well as conditions of employment like compensation, benefits, and work schedules; (3) the alleged employer's day-to-day supervision and discipline of employees; and (4) the alleged employer's control over employee records, including payroll, insurance, or taxes. *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012).[8]   As the Third Circuit has noted, "these factors do not constitute an exhaustive list of all potentially relevant facts, and should not be blindly applied." *Id.*  This test considers the "economic realty" of the potential employment relationship and takes into account the expansive definition of "employer" under the FLSA.  *Id.* at 467 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).  Under the *Enterprise* framework, the court should consider all relevant evidence suggesting the existence of a joint employment relationship, including that which "does not fall neatly within one of the above factors."  *Enterprise*, 683 F.3d at 469.

After assessing the "economic reality" of Plaintiffs' relationship with Defendants, the Court finds that the evidence weighs heavily against the existence of a joint employer relationship between FedEx Express and FedEx Ground.  Security specialists are hired by FedEx Express, not FedEx Ground.  Defs.' Suppl. Br. 10.  FedEx Ground has no authority to hire, fire, or discipline security specialists.  Defs.' Sur-Reply 5.  FedEx Express interviewed and

---

[8] Some circuits distinguish between "vertical" and "horizontal" joint employment relationships to determine whether an entity is an joint employer under the FLSA.  *See, e.g.*, *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 917 (9th Cir. 2003); *Murphy v. Heartshare Human Services of New York*, 254 F. Supp. 3d 392, 396-99 (E.D. NY. 2017).  A "vertical" joint employment relationship may arise where a company has contracted with an intermediary employer for labor services provided by employees of that intermediary.  *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter re Fair Labor Standards Act (FLSA), 2016 WL 284582, at *8 (Jan. 20, 2016).  A "horizontal" joint employment relationship may exist where employees perform work that simultaneously benefits two or more separate employers or work separate hours for separate employers at different times throughout the workweek.  *Id.* at 5-6.  The Third Circuit does not make this distinction.  *See Enterprise*, 683 F.3d at 469.  However, given the purported independent contractor relationship between FedEx Express and FedEx Ground, the "vertical" joint employment analysis would likely be appropriate regardless.  Under a "vertical" joint employer analysis, the Court would consider the same factors as those enumerated in *Enterprise* to determine whether there was a joint employment relationship between Defendants.  *See* 29 C.F.R. § 791.2(a)(1).

hired Ms. Fischer.  Defs.' Suppl. Br 10.  When Ms. Fischer resigned her position, she only

notified FedEx Express management.  *Id.* at 9-11.  According to Ms. Fischer, FedEx Ground

never took any actions that she considered to be disciplinary in nature.  Pls.' Suppl. Br. 19.

FedEx Ground does not compensate security specialists, nor do they provide input

regarding their compensation.  Defs.' Suppl. Br. 11.  Plaintiff was only paid by FedEx Express.

*Id.*  FedEx Ground does not train security specialists.  *Id* at 10.  FedEx Ground does not set the

work schedules for security specialists.  *Id.* at 11.  FedEx Express and FedEx Ground have

separate management chains.  *Id.* at 10.  Ms. Fischer's entire management chain was employed

by FedEx Express.  *Id.*  FedEx Express assigns security specialists to worksites and instructs

them on how to perform their work at those sites.  *Id.*  FedEx Express supervises security

specialist performance at their assigned worksites, and security specialists submit periodic

summaries of their activities to FedEx Express.  *Id.*

Given the substantial weight of evidence against a joint employment relationship,

Plaintiff's assertion that FedEx Express acted directly in the interest of FedEx Ground by

supervising security specialists at FedEx Ground worksites does nothing to tip the scale in their

favor.  *See Katz v. DNC Services Corporation*, No. 16-5800, 2019 WL 4752056, at *6 (E.D. Pa.

Sept. 27, 2019).  Plaintiffs have offered no "indicia of significant control" suggesting that FedEx

Ground could be fairly characterized as their joint employer.  *Enterprise*, 683 F.3d at 470.  The

Court therefore finds that FedEx Ground was not Plaintiffs' joint employer during the relevant

period.  As a result, the Court need not consider whether joint employer liability confers general

jurisdiction over out-state-state claims against FedEx Ground.

### 3.    Pennsylvania Opt-In Plaintiffs and Specific Personal Jurisdiction

A court may exercise specific jurisdiction over a claim against a defendant where there

is an "affiliation between the forum and the underlying controversy."  *Goodyear*, 564 U.S. at

919.  FedEx Express "purposely avail[ed] itself of the privilege of conducting activities" within Pennsylvania.  *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Likewise, claims by opt-in plaintiffs who live and work in Pennsylvania alleging harm from FLSA violations by FedEx Express establish a connection between the forum state and the underlying litigation.  The existence of these minimum contacts renders jurisdiction presumptively constitutional, absent some compelling argument for why exercising jurisdiction over FedEx Express would be unreasonable.  *See Burger King*, 471 U.S. at 477.  Defendants have offered no such argument, and the Court can discern no compelling reason to decline exercising specific jurisdiction over claims by Pennsylvania plaintiffs.

On the other hand, out-of-state opt-in plaintiffs do not claim to have suffered harm within the forum state.  Those alleged FLSA violations occurred outside of Pennsylvania and, as such, do not form the requisite connection between activities within the state and the case at hand.  "[T]he unilateral activity of those who claim some relationship with a nonresident defendant" is not a sufficient basis to establish specific jurisdiction.  *O'Connor*, 496 F.3d at 317 (quoting *Hanson*, 357 U.S. at 253).  In this case, a Pennsylvania court can only assert specific jurisdiction over claims by Pennsylvania opt-in plaintiffs against FedEx Express.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).  Therefore, this Court will certify a collective action consisting of individuals employed by Federal Express in Pennsylvania as a Security Specialist II, Security Specialist III, or Senior Security Specialist within the past three years who allegedly did not receive proper overtime compensation for hours worked over 40 per workweek.

c.     **Form of Notice**

District courts possess discretion to provide court-sanctioned notice once they conditionally certify a collective action.  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  Defendants have offered a number of objections to Plaintiffs' proposed Notice and Consent Form to be sent to putative members of the collective.  Defs.' Resp. 15-20.  "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality [and]...must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche*, 493 U.S. at 174. Accordingly, disputes regarding the form and content of court-sanctioned notice should be resolved by the Parties.  *See Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, 15-482, 2016 WL 3077936, at *7-12 (E.D. Pa. June 1, 2016).  The Parties therefore will be afforded sufficient time to confer and resolve any objections regarding the form and scope of Plaintiffs' proposed Notice and Consent Form.  Should the Parties fail to reach a consensus, they shall submit their proposed language to the Court within the time period prescribed in the accompanying Order and the Court will determine which is the appropriate form of notice, subject to possible modifications.

## V.      CONCLUSION

Plaintiffs have made a modest factual showing that they and other putative class members are similarly situated.  Therefore, the Court will grant the Motion for Conditional Certification, but only for putative opt-in plaintiffs who worked for FedEx Express in Pennsylvania during the relevant period.  The Parties shall meet and confer regarding the proper form and scope of notice to be distributed to potential members of the collective.  An appropriate Order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge