IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTA B. FISCHER,
Individually and on Behalf of Others
Similarly Situated Employees,

       Plaintiff,

v.                             Case No.: 5:19-cv-04924-JMG

FEDERAL EXPRESS CORPORATION,

       Defendant.

## MEMORANDUM IN SUPPORT OF JOINT MOTION TO APPROVE FAIR LABOR STANDARDS ACT SETTLEMENT

Plaintiff Christa B. Fischer ("Named Plaintiff") and Defendant Federal Express Corporation

("FedEx") (the "Parties") hereby move this Honorable Court to grant settlement approval as follows.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiff Christa Fischer filed her initial Class and Collective Complaint against

Federal Express Corporation and FedEx Ground Package System, Inc.[2] on October 22, 2019,

alleging unpaid overtime violations under the Fair Labor Standards Act ("FLSA"), the

Pennsylvania Minimum Wage Act ("PMWA")[3], and the Pennsylvania Wage Payment and

---

[1] This motion was previously filed with redactions (ECF No. 109-11), and submitted under seal (ECF No. 109-12). In light of the Court's Order denying Defendant's motion to seal this motion and associated exhibits (ECF No. 111), Plaintiffs now file the motion and supporting materials without redactions.

[2] FedEx Ground Package System, Inc. was voluntarily dismissed. ECF No. 80.

[3] "The PMWA, like the FLSA, provides that employees shall receive overtime wages of 'not less than one and a half times' their regular wage for any hours worked after forty in a work week. 43 P.S. § 333.104(c). Pennsylvania courts have looked to federal law regarding the FLSA in applying the PMWA." *Crevatas v. Smith Mgmt. & Consulting, LLC*, No. CV 3:15-2307, 2017 WL 1078174, at *2 (M.D. Pa. Mar. 22, 2017).

Collection Law ("PaWPCL") and in the above styled action (the "Litigation."). The Complaint alleged that Plaintiff and other security specialists were misclassified as exempt from overtime and so were not properly compensated for all hours worked over forty in a workweek under federal and state wage laws. The Complaint included collective action claims under the FLSA, as well as Fed. R. Civ. P. 23 class allegations under Pennsylvania state wage and hour laws.

Defendants denied Plaintiff's allegations. On February 3, 2020, Defendants filed a joint Motion to Dismiss on multiple grounds. (ECF No. 15.) On May 12, 2020, the Court denied Defendants' Motion in full. (ECF No. 23.) Three days later, on May 15, 2020, Plaintiff filed a Motion to Certify the Class Conditionally under the Fair Labor Standards Act, seeking nationwide conditional certification of a collective consisting of all salaried security specialists. (ECF No. 24-1.) Defendants opposed, arguing that nationwide conditional certification was inappropriate because the Court lacked personal jurisdiction over putative collective action members who were not residents of Pennsylvania. (ECF No. 30.) The Court ultimately limited the collective to residents of Pennsylvania only, ruling it did not have personal jurisdiction over the claims of out-of-state putative collective class members. (ECF No. 51.) Plaintiffs sought interlocutory review of this decision (ECF No. 56), which the Court granted (ECF No. 57). On July 26, 2022, the Third Circuit Court of Appeals affirmed the district court's decision. 42 F.4th 366 (3d Cir. 2022). Plaintiff petitioned for certiorari, which the Supreme Court denied on March 6, 2023. 143 S. Ct. 1001 (2023).

After remand, notice was distributed to security specialists who worked in Pennsylvania. (*See* ECF Nos. 83, 84.) After the notice process, the case consists of five plaintiffs: the Named Plaintiff, and four other security specialists: Randy Fischer, Robert Dunbar, William Sturdevant, and William Schroeder (collectively, "Plaintiffs") who worked in Pennsylvania and timely

submitted consent to join forms. (Brome Dec. ¶ 2.) Plaintiffs all worked or work as security specialists at FedEx in Pennsylvania.

Plaintiffs contend that, regardless of their level of seniority, supervisor, or territory, all security specialists perform the same set of core tasks. Those tasks are focused on gathering facts and conveying accurate information, not on running FedEx's business. For example, many security specialists agree that investigating package loss and workplace violence incidents take up the bulk of their work time. And those investigations, while important, are not shaping FedEx company policy; they are gathering facts, one investigation at a time, and then passing on the results so others can make informed decisions. To satisfy its administrative exemption defense, FedEx must prove that security specialists' primary duty (1) was "directly related to the management or general business operations" of FedEx's or its customers, *and* (2) included the exercise of discretion and independent judgment regarding matters of significance. 29 C.F.R. § 541.200(a). Plaintiffs contend FedEx cannot meet its burden under either prong, and that testimony from FedEx witnesses, company documents, and Plaintiffs' testimony confirm this. *See Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 124 (4th Cir. 2015) (affirming summary judgment for plaintiffs and finding that the investigators' "primary duty is too far removed from their employer's management or general business operations to satisfy the directly related element").

Defendant, on the other hand, contends that security specialists are properly classified as exempt from overtime. Further, Defendant has asserted a variety of defenses, including that it is an airline and so its employees – including Security specialists – are exempt from overtime, because the FLSA exempts from its overtime provision "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act." 29 U.S.C. § 213(b)(3).

The Parties have conducted substantial discovery. Defendant has deposed the Named Plaintiff and three of the four opt-in Plaintiffs. Plaintiffs have deposed a supervisor and multiple witnesses under Rule 30(b)(6). (Brome Dec. ¶ 3.) Notably, Defendant produced extensive records from eSIMS, the platform that security specialists use for tracking and documenting their investigatory work. (*Id.*) Because of this discovery, the Parties had ample information to evaluate the claims and defenses. (*Id.*)

Given that the case contained only five Plaintiffs, and the Pennsylvania group was relatively small, Plaintiffs determined that motions for FLSA final certification and Rule 23 class certification were not warranted.[4] (ECF No. 94.) To ensure that the opt-in Plaintiffs could benefit from potentially advantageous state law claims, Plaintiffs intended to file a motion for leave to amend to add Pennsylvania state law claims for individual opt-ins. (Brome Dec. ¶ 4.) Compared to the FLSA, Plaintiffs have contended that Pennsylvania provides a more favorable method of

---

[4] This procedural trajectory is not uncommon. *E.g. Crevatas*, 2017 WL 1078174, at *1 (approving settlement in a case originally filed with FLSA collective claims and Pennsylvania class claims, where plaintiff later withdrew the Rule 23 class claim, and the parties acknowledged that opt-ins were bringing both FLSA and PMWA claims); *Waltz v. Aveda Transportation & Energy Servs. Inc.*, No. 4:16-CV-00469, 2017 WL 2907217, at *1 (M.D. Pa. July 7, 2017) (case initially filed with FLSA claims and Pennsylvania claims was ultimately settled for the named plaintiff and five opt-in plaintiffs, with no class component).

calculating overtime wages[56]; additionally, Pennsylvania claims could cover a much longer time period, assuming they run back from the date of the initial complaint, as opposed to from the date each individual opted into the case. Prevailing on a motion to amend was not a forgone conclusion, however: Defendant indicated that it would oppose such a motion and argue that the individual Plaintiffs' claims were, either entirely or in large measure, time-barred. Additionally, the Court had previously denied a motion to amend. (ECF No. 76.) With that uncertainty, and with dispositive motions expected, the Parties agreed to explore settlement.

The Parties pursued bilateral negotiations since early in 2024, exchanging multiple letters regarding their respective legal positions and damages calculations. (*See* ECF No. 100.) To assist with negotiations, the Parties attended a settlement conference with Magistrate Judge Carlos. (ECF No. 102.) The Parties participated in a full-day in-person settlement conference on July 31, 2024. (ECF No. 107.) The settlement conference did not result in a settlement, but the Parties continued negotiating, both independently and with Judge Carlos's assistance. (*See* ECF No. 108.) The Parties agreed on the total amount of a settlement on September 26, 2024. (Brome Dec. ¶ 5.) The Parties continued negotiations over non-monetary terms, first through a terms sheet and then

---

[5] Plaintiffs contend that, unlike the FLSA, the "fluctuating workweek" method of calculating overtime (under which employees are deemed to have been compensated for the "straight time" component of overtime by way of their regular salary) is generally not available under state law in Pennsylvania. *See Verderame v. RadioShack Corp.*, 31 F. Supp. 3d 702, 709 (E.D. Pa. 2014) (fluctuating workweek method impermissible under the plain language of 34 Pa. Admin. Code § 231.43(d)(3), an implementing regulation of the PMWA). FedEx disputes this analysis, as the principal case on which Plaintiffs rely, *Chevalier v. General Nutrition Centers, Inc.*, 220 A.3d 1038 (2019), did not involve employees whose non-exempt status in dispute, and did not involve retroactive calculation of overtime.

[6] FedEx also disputed Plaintiffs' contention that Plaintiffs' overtime rates of pay should be calculated by dividing total pay by forty (40) hours, rather than actual hours worked. FedEx argued that retroactive application of the 2022 regulation (34 Pa. Code § 231.43 (g)) and related case law on which Plaintiffs relied, ran afoul of Pennsylvania law.

through individual settlement agreements for each of the Plaintiffs. (*Id.*) The Parties finalized these agreements on October 14, 2024; all agreements were executed on October 16, 2024. (*Id.*)

## I.    SETTLEMENT TERMS

Because the case consists of five individuals, with no absent class members, each Plaintiff has signed his or her own agreement (submitted with the accompanying declaration), which contain the same terms, and which operate as a group. The settlement provides that FedEx will pay $825,000.00 to resolve this case, including attorneys' fees and costs; none of that amount will revert to FedEx. (Agreements ¶ 1.) First, the Parties agreed that FedEx will pay $491,617.93 to the five Plaintiffs, which, according to Plaintiffs, represents Plaintiffs' damages assuming ten overtime hours per week, using the payroll and employment history data provided by FedEx. (*Id.* ¶ 2.) These settlement amounts will be divided evenly into a wage portion, reported on an IRS Form W-2, and a non-wage portion, reported on an IRS Form1099. (*Id.* ¶ 4.) The settlement provides for a service payment of $10,000 to the Named Plaintiff . (*Id.* ¶ 5.) The remaining amount, $323,382.07, is allocated to attorneys' fees and costs. (*Id.* ¶ 6.) From that, $21,556.02 will go to costs, and $301,826.05 will go to fees. (Brome Dec. ¶ 6.)

In exchange for their settlement payments, each Plaintiff will release FedEx from "all claims brought in the Litigation, including for known and unknown overtime compensation, liquidated damages, and interest under the Fair Labor Standards Act, PMWA and PaWPCL arising from Plaintiff's employment with Defendant as a security specialist through the date of Plaintiff's execution of this Agreement." (Agreements ¶ 7.) Additionally, the Plaintiffs agreed "not to communicate the dollar amounts of their settlement payments to anyone besides immediate family members, tax preparers, financial advisors, or attorneys," and to file monetary amounts with redaction in the approval motion. (*Id.* ¶ 11.)

6

The settlement calls for a motion for settlement approval. (*Id.* ¶ 10.) Upon Court approval, the claims shall be dismissed with prejudice, and Defendant will pay within twenty-one days. (*Id.* ¶¶ 10, 12.) If the Court denies in whole or in part Defendant's motion to seal, or denies approval of the confidentiality provision, such ruling will not affect the remainder of the agreement. (*Id.* ¶ 11.)

## LEGAL ARGUMENT

Courts and public policy favor the voluntary resolution of litigation through settlement. *Carney v. Travelers Aid Soc'y of Philadelphia*, No. CV 19-3599, 2020 WL 703684, at *2 (E.D. Pa. Feb. 11, 2020). The Third Circuit has held that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding formal litigation." *In re Motors Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Here, the Parties favorably settled after years of hard-fought litigation, which will avoid the need for further proceedings that would have been both costly and risky. For the reasons set forth below, the Court should approve the Parties' FLSA settlement.

## I.    THE FLSA SETTLEMENT WARRANTS APPROVAL

FLSA settlements must be approved for fairness. "Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014) (citing *Lynn's Food Stores Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir.1982)). When courts evaluate a proposed settlement, "the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere

waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (quoting *Lynn's Food,* 679 F.2d at 1354). This standard has been explained through three elements: "***First***, the agreement must resolve a bona fide dispute under the FLSA—that is, it must reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute. . . ***Second***, the settlement must be fair and reasonable for the employee(s). . . . ***Third***, the settlement must not impermissibly frustrate the implementation of FLSA in the workplace." *Carney*, 2020 WL 703684, at *2 (internal quotations and citations omitted). Here, all three elements are satisfied, so approval is warranted.

Courts use the same standards for collective and individual FLSA settlements. *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016). Courts routinely approve FLSA-only collective actions in a single step. *See, e.g.*, *Crevatas*, 2017 WL 1078174, at *1 (approving settlement in one step that included FLSA and Pennsylvania claims on a non-class basis). Here, all the Plaintiffs have signed an individualized settlement agreement indicating their assent to the settlement terms, so a one-step approval is appropriate. *See Waltz*, 2017 WL 2907217, at *3 ("I note that the individual employees to this suit have expressed their assent to the terms of the settlement as each plaintiff has personally executed a settlement agreement.").

### A. The Settlement Resolves a Bona Fide Dispute

A settlement resolves a *bona fide* dispute when it falls "within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). Here, Plaintiffs allege that they routinely worked overtime without receiving premium pay. Defendant contends that Plaintiffs were properly classified as exempt under one or more exemptions from overtime. The Parties vigorously dispute whether Defendant could satisfy its burden to show Plaintiffs

qualify for an exemption. Likewise, the Parties dispute whether FedEx can show that the Plaintiffs are exempt under the Railway Labor Act. As a result, there is a *bona fide* dispute about whether Defendant owes compensation to Plaintiffs. *See Potoski v. Wyo. Valley Health Care Sys.*, 132, at *3 (M.D. PA. Jan. 14, 2020) (dispute was *bona fide* on this basis). Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expenses associated with continued litigation, the parties agree that a compromise is appropriate. *See Lynn's Food,* 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

Beyond the disputes about entitlement to overtime, this litigation involved numerous other disputes, that are being resolved through this settlement, further supporting approval. For example, the Parties disputed whether collective treatment was appropriate; if and how representative evidence could be used to prove Plaintiffs' claims; whether the Opt-in Plaintiff who was not deposed should be able to recover; whether any alleged violation was willful and therefore the appropriate statute of limitations; whether Defendant could support a good faith defense to liquidated damages; and the proper measure of damages (if any). This settlement resolves these disputes; approval is warranted.

### B. The Settlement Is Fair and Reasonable

When determining if an FLSA settlement is fair and reasonable, courts generally rely on the factors for approving class action settlements under Rule 23. *Reynolds v. Turning Point Holding Co., LLC*, No. 2:19-CV-01935-JDW, 2022 WL 2541352, at *3 (E.D. Pa. July 7, 2022); *Potoski*, 2020 WL 207061, at *3; *Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *2 (M.D. Pa. Sept. 25, 2013). In the Third Circuit, courts have traditionally looked to "the *Girsh* factors" in

deciding whether a class-action settlement is fair and reasonable. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). "When considering the settlement of individual FLSA claims, however at least some of the *Girsh* factors appear to be little help, if not irrelevant and courts need not fall into the alluring trap of mechanically applying *Girsh*." *Abouakil v. Blaze Auto, LLC*, No. CV 23-4480, 2024 WL 2249824, at *2 (E.D. Pa. May 17, 2024) (quotation and citation omitted).

The *Girsh* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund given the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery given the attendant risks of litigation. *Girsh*, 521 F.2d at 157 (alterations omitted) (quoting *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Rule 23 has since been amended to provide specific factors, but *Girsh* remains widely used (*e.g.*, *Potoski*, 2020 WL 207067, at *3), and "*Girsh* substantially overlaps with the factors identified in Rule 23." *Hall v. Accolade, Inc.*, No. CV 17-3423, 2019 WL 3996621, at *2 n.1. (E.D. Pa. Aug. 23, 2019).[7] Here, an analysis of the *Girsh* factors or the Rule 23(e) factors shows that approval is warranted.

### 1. The Settlement Accounts for the Costs, Risks, and Delays of Litigation (Factors 1 and 6)

---

[7] Under Federal Rule of Civil Procedure 23(e), courts look to several factors when determining whether to grant final approval of a class action settlement. *Hall*, 2019 WL 3996621, at *2 (quoting Fed. R. Civ. P. 23(e)(1)). Specifically, these are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *Id.* quoting Fed. R. Civ. P. 23(e)(2)).

The first *Girsh* factor strongly supports this Settlement. Courts recognize that there are "substantial litigation risks inherent in FLSA and wage lawsuits." *Flores v. Eagle Diner Corp.*, No. 2:18-CV-01206-AB, 2019 WL 3943355, at *8 (E.D. Pa. Aug. 21, 2019). This case has been pending for five years. *Potoski*, 2020 WL 207061, at *4 ("if the litigation were to continue, as it likely would given the past eight years of contentiousness, it would be at great expense as the attorney's fee and other costs would continue to accumulate.") (citation omitted). Here, absent settlement, the Parties would have filed competing briefs for summary judgment regarding the applicability of an exemption. Even if Plaintiffs prevailed on summary judgment, a trial would likely be necessary to prove damages. Continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court, and possibly also before the Third Circuit, in the event of any appeals. These proceedings would have significantly delayed any relief to Plaintiffs and might have resulted in no relief. Even where a "case is not especially complex, litigation would be expensive and time-consuming." *Abouakil*, 2024 WL 2249824, at *2.

Similarly, the sixth factor (risk of maintaining the class through trial) supports approval here. Defendant opposed Plaintiffs' motion for conditional certification before this Court (ECF Nos. 30, 49) and on appeal. Defendant would have likely challenged proceeding to trial on a collective basis. *See Galt*, 310 F. Supp. 3d at 494–95 ("[T]he practical and legal risks of decertification [favor] settlement[.]"). While Plaintiffs maintained that the Security specialists are similarly situated and that their claims could be proven using representative evidence, there was risk that all Plaintiffs would need to testify at trial to have a chance at recovery. These factors favor approval.

### 2.  The Parties Conducted Ample Discovery (Factor 3)

The third *Girsh* factor (stage of the proceedings and extent of discovery conducted)

strongly supports approval. The Parties engaged in extensive discovery, allowing them to evaluate the strengths and weaknesses of their respective positions. *See Smith v. Merck & Co., Inc.*, 2019 WL 3281609, at *5 (D. N.J. July 19, 2019) (where the parties "engaged in significant discovery," plaintiffs demonstrated "the parties were armed with enough information to assess the strengths and weaknesses of their case and strike a deal relative to the risks of prolonged litigation"). Plaintiffs deposed a supervisor and multiple corporate witnesses under Rule 30(b)(6), and obtained and reviewed hundreds of documents from Defendant, allowing for detailed analysis of Plaintiffs' claims. (Brome Decl. ¶ 3.) Additionally, Plaintiff responded to written discovery, and Defendant deposed four out of five Plaintiffs. (*Id.*.) When the Parties requested the Court stay the case to pursue negotiations, they had ample information to evaluate the claims and calculate possible outcomes, supporting approval.

### 3. The Settlement is Within the Range of Reasonableness, Given the Risks and Possible Recovery (Factors 4, 5, 8 and 9)

Several of the *Girsh* factors (4 – risk of establishing liability, 5 – risk of establishing damages, 8 – range of reasonableness given the best possible recovery, and 9 – range of reasonableness given litigation risks) call for balancing the outcome from settlement against the possible outcomes through litigation. Likewise, Rule 23 seeks to balance the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments). This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.* Here, the Settlement is within the acceptable range, and supports approval.

Plaintiffs' Counsel created detailed damages models based on analysis of Defendant's compensation and employment history data, supplemented with hours information obtained

through Plaintiff depositions. (Brome Decl. ¶ 7.) The settlement allocations were drawn directly from Plaintiffs' damage model, assuming 50 hours per week for the maximum statutory period (assuming amendment to allow Pennsylvania claims with full relation back), with Pennsylvania's 25% liquidated damages. (*Id.*) Individual recoveries range from $24,887.33 (for a Plaintiff with 47 covered weeks) to $237,935.14 (calculated based on 407 covered weeks), with an average recovery of $98,323.59 per Plaintiff, representing approximately $560 per workweek. (*Id.*) This is a very favorable result, and strongly supports approval. *See Wood v. AmeriHealth Caritas Servs., LLC*, No. CV 17-3697, 2020 WL 1694549, at *7 (E.D. Pa. Apr. 7, 2020) (approving settlement in overtime exemption case that provided "average settlement amount of $12,248.84 or $131.47 per eligible workweek"). When considering the range of possible outcomes here, this is an excellent result.

First, if Defendant proved the exemption defense, then Plaintiffs would recover nothing, which supports approval. *Abouakil*, 2024 WL 2249824, at *2; *see also Waltz*, 2017 WL 2907217, at *3 (noting risk that plaintiffs might not establish liability and damages, as well as disputes about coverage, statutes of limitations, and amount of overtime claimed, supported approval). Even if Plaintiffs prevailed as to the exemption, there is still a significant range of outcomes. Depending on the assumptions and inputs, the possible recovery could vary considerably. On the high end, assuming <u>complete</u> success for Plaintiffs – avoiding decertification, amending to add individual Pennsylvania claims, proving liability, proving that Defendant's violation was willful, defeating Defendant's good faith defense to liquidated damages, avoiding the fluctuating workweek for FLSA claims, and recovering all claimed hours – Plaintiffs' Counsel calculated Defendant's exposure at $1,362,341.01. (Brome Decl. ¶ 8.) This best-case scenario would only occur if Plaintiffs established <u>every hour</u> of overtime claimed, with some Plaintiffs estimating as much as

65 hours per week at busy times. The $825,000[8] settlement here compares favorably with the maximum recovery and strongly supports approval. *See Katz v. DNC Servs. Corp.*, 2024 WL 454942, at *8 (E.D. Pa. Feb. 6, 2024) (finding settlement worth 30% of the maximum recovery supported approval).

Recovering the maximum is an unlikely outcome, even if Plaintiffs prevail. Indeed, there are many circumstances where Plaintiffs could achieve partial success, but recover considerably less than they are receiving through the settlement here. For example, if the Court denied Plaintiffs' motion to amend, such that only the Named Plaintiff's state law claims were included, and applied the fluctuating workweek method to the FLSA claims, Plaintiffs could only recover $328,172.64 – even if they proved a willful violation, defeated the good faith defense, and recovered all their claimed hours. (Brome Decl. ¶ 9.) If Plaintiffs recovered based on a non-willful violation, without liquidated damages, for 50 hours per week, they could recover $181,892.59. (*Id.*) Both are very plausible outcomes, well below what Plaintiffs are recovering through this settlement. Under the proposed agreement, Plaintiffs will recover the equivalent of 50 hours per week for the maximum possible statutory period (assuming amendment to allow Pennsylvania claims with full relation back), with the Pennsylvania 25% liquidated damages. Plaintiffs' recovery is tied to their counsel's damage model, and results in a total settlement amount of $491,617.93. This is a very favorable recovery for the claims here. The settlement amounts are tied to each individual Plaintiff's potential damages because they are based on the individual compensation and employment records.

While Plaintiffs vigorously contested Defendant's positions and were fully prepared to

---

[8] It is appropriate to compare the value of the settlement <u>including</u> attorneys' fees "because attorneys' fees are part of the plaintiff's remedy." *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020)

litigate the disputed issues, this settlement considers the risks associated with these various components of Plaintiffs' damages. Given uncertainty of success and the risks of moving forward with litigation, the settlement is fair and appropriate. *See Potoski*, 2020 WL 207061, at *4 (litigation risks including statute of limitations issues regarding FLSA willfulness and issues regarding amount of overtime hours actually worked justified approval); *Hall*, 2019 WL 3996621, at *4 (litigation risks including FLSA's statute of limitations standard for willfulness and issues regarding amount of overtime hours actually worked supported granting preliminary approval).

### 4.  The Remaining *Girsh* Factors Support Approval (Factors 2 and 7)

The two remaining *Girsh* factors (The reaction of the class to the settlement, and the ability of the defendant to withstand a greater judgment) are either neutral or support approval. The settlement here covers only FLSA Opt-ins, who were fully informed of their rights and options and affirmatively signed settlement agreements. This supports approval. *See Potoski*, 2020 WL 207061, at *4 (individuals had "opted into this action and agreed to let Class Counsel represent them in these proceedings, including overseeing settlement negotiations."). The seventh factor should be afforded little weight, given that all other factors support approval. *Id.* (seventh factor need not be squarely addressed given "the overwhelming weight of the other factors.").

### 5.  The Remaining Rule 23 Factors Support Approval

Rule 23(e) includes several other factors that are similar, but not identical, to the *Grish* factors. These also support approval.

First, the settlement treats all Plaintiffs equitably. This factor prevents "inequitable treatment of some class members *vis-à-vis* others." Fed. R. Civ. P. Advisory Committee Notes (2018 Amendments). Here, the settlement allocation treats Plaintiffs equitably relative to each other. To calculate each Plaintiff's *pro-rata* settlement allocation, Plaintiffs' Counsel performed a

detailed and comprehensive damages analysis. (Brome Decl. ¶ 10.) For each Plaintiff, the analysis considered the statutory period and wages paid. (*Id.*) For purposes of this settlement, Plaintiffs used a uniform assumption of ten overtime hours per workweek, and calculated each individual's wage loss based on the pay reflected in Defendant's data. (*Id.*) The settlement allocations are taken directly from Plaintiffs' Counsel's damage calculations. (*Id.*) Plaintiffs have therefore satisfied the requirement that opt-ins be treated equitably. *Wood*, 2020 WL 1694549, at *7 (finding this factor satisfied where settlement was based on uniform assumption of 48 hours worked per week, such that "[a]ny differences between the amounts they will receive are due to the number of eligible weeks worked . . . during the applicable statutory period, annual base salary data and their available remedies under the FLSA and/or relevant state law.").

Second, the Named Plaintiffs and Plaintiffs' Counsel adequately represented the group. This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop enough information about the case to appreciate sufficiently the value of the claims"). Plaintiffs' Counsel exhausted considerable time and effort on this case, including: (1) taking an extensive 30(b)(6) deposition and a supervisor deposition; (2) requesting and reviewing written and electronic discovery, including voluminous eSIMS data; (3) constructing damages models; (4) briefing and arguing numerous contested motions; (5) collecting information and responding to discovery from Opt-ins; and (6) participating in a full-day settlement conference. (Brome Decl. ¶ 11.) Plaintiffs' Counsel's efforts have been adequate. The Named Plaintiff Christa Fischer is likewise adequate. The Named Plaintiff has demonstrated a commitment to the case by helping to prepare the Complaint, completing written discovery, providing deposition testimony, and participating in a

16

full-day settlement conference. (Brome Decl. ¶ 12.) She has maintained regular contact with Plaintiffs' Counsel and has been and remains committed to representing the other security specialists. (*Id.*)

Third, the proposed Settlement was negotiated at arm's length. The proposed settlement was the product of extensive, arm's length negotiations, with experienced and informed counsel on both sides. Plaintiffs' Counsel is experienced in wage and hour and class action matters and has reasonably assessed the risks of continued litigation and benefits of settlement. Defendant was represented by multiple attorneys likewise experienced in wage-and-hour complex litigation. The parties also engaged in a settlement conference with Magistrate Judge Carlos to resolve their dispute. This raises a presumption of prudence. *See Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.").

Fourth, the method for distributing relief is effective. Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments). Plaintiffs' Counsel has already reviewed the settlement terms with the Plaintiffs, and all Plaintiffs have executed their settlement agreements. This process favors approval.

## C.  The Proposed Attorneys' Fees are Reasonable and Should be Approved

Plaintiffs further request that the Court approve Plaintiffs' Counsel's attorneys' fees request as reasonable. Plaintiffs request attorneys' fees of $301,826.05, costs of $21,556.02, and a service award of $10,000 to Named Plaintiff Fischer. (Brome Dec. ¶ 13.) The FLSA states that the

Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

In the Third Circuit, courts may use the lodestar method or the percentage-of-recovery method for awarding attorneys' fees. *Dominguez v. Galaxy Recycling Inc.*, No. CV 12-7521 (LDW), 2017 WL 2495406, at *7 (D.N.J. June 9, 2017). Here, the lodestar method is appropriate since Plaintiffs recovered a substantial settlement, but for a small group of individuals, based on statutory employment laws with fee shifting provisions. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (stating the lodestar method is generally "the appropriate method in statutory fee shifting cases"). Further, because the Plaintiffs' allocations were negotiated specifically, with attorneys' fees and costs added on, the lodestar method is appropriate. *See Dominguez*, 2017 WL 2495406, at *7 (noting that the percentage of recovery method is preferred in common fund cases, but even there the lodestar method can avoid fee awards that are not proportionate to the work performed).

Under the lodestar method, the fee requested here is reasonable because it results in a negative multiplier. (*See* Brome Decl. ¶ 19.) Specifically, Plaintiffs' Counsel's lodestar value is currently over $660,000, calculated based on 1,386.2 total hours at hourly rates ranging from $400 – $720 for attorneys, and $150 – $275 for staff members. (*Id.*). The negative multiplier—*i.e.*, the lodestar that is higher than the requested fees— "confirms that the requested attorney's fee award is fair and reasonable under the FLSA." *Carney*, 2020 WL 703684, at *4; *accord Alvarez*, 2020 WL 1694294 at *8 (when using lodestar method as a crosscheck, a "low multiplier confirms that the requested attorney's fee award is fair and reasonable under the FLSA"); *see also Solkoff*, 435 F. Supp. 3d at 658 (when using lodestar method as a crosscheck, a negative multiplier confirms reasonableness of fee request). The Court's lodestar analysis may rely on summaries and need not

review actual billing records. *Wood*, 2020 WL 1694549, at *10 (citation omitted).

Here, the requested fees are almost identical to those recently approved in the recent *Alvarez* case. 2020 WL 1694294, at *7. There, the total settlement was $800,000, and the court approved fees of $323,733.35 and costs of $26,266.65. *Id.* Here, the total settlement is slightly higher ($825,000), and the fees ($301,826.05) and costs ($21,556.02) are slightly lower. The fees are reasonable.

Although the percentage of recovery method is not a good fit, the fee request also warrants approval under that approach. Courts use that method "in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class." *In re Gen. Motors Corp.*, 55 F.3d at 821. Under that method, fees in FLSA cases range from roughly 20-45% of the common fund. *Alvarez* 2020 WL 1694294, at *7. Here, the fees requested amount to 36.6% of the total recovery – within the range for FLSA cases. *Id.* (approving fees representing 40% of the recovery); *Dominguez*, 2017 WL 2495406, at *7 (approving fees worth 37% of the maximum potential settlement value, even though significantly less than claimed, and exceeded the amount going to claimants).

Courts consider several factors under the percentage of recovery method.[9] Here, these factors all support approval. First, the settlement provided substantial payments to five Plaintiffs. The individual allocations range from $24,887.33 to $237,935.14. The first factor therefore favors approval. *See Wood*, 2020 WL 1694549, at *8 (settlement that delivered average payments of $7,870.75 after fees and costs "confers a significant benefit . . . and the first factor favors approval."). Next, all Plaintiffs signed settlement agreements with clear information about attorneys' fees. *Starnes v. Amazon.com, Inc.*, No. CV 23-484, 2023 WL 3305159, at *8 (E.D. Pa.

---

[9] *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

May 8, 2023) (noting applicability of this factor in FLSA collective action). The third factor, skill and efficacy of the attorneys involved, supports approval. As described in the accompanying declaration, counsel here has significant experience in wage and hour litigation. (Brome Dec. ¶ 20.) *Wood* 2020 WL 1694549, at *9 (recognizing skill and experience of counsel, including Nichols Kaster, one of the firms representing Plaintiffs here). The fourth factor, complexity and duration of litigation, likewise supports approval: this case has been pending for five years and has been actively litigated at the district court and on appeal, including multiple contested motions, ample discovery, and extensive negotiations. *See Dominguez*, 2017 WL 2495406, at *8 (citing "motion practice, extensive discovery, and protracted settlement negotiations"). The fifth factor – risk of nonpayment – generally supports approval in contingency cases such as this one. *Starnes*, 2023 WL 3305159, at *9. Plaintiffs took on this case "with no guarantee of payment," supporting approval. *Dominguez*, 2017 WL 2495406, at *8; *see also Wood* 2020 WL 1694549, at *9. Plaintiffs' Counsel spent considerable time on this case, so the sixth factor supports approval. *Starnes*, 2023 WL 3305159, at *8 (explaining that counsel had spent 621.5 hours as of the date of their supplemental memorandum supporting the settlement). Finally, the seventh factor considers awards in similar cases. Again, the fees requested here are within the range commonly approved. *E.g.*, *Alvarez*, 2020 WL 1694294, at *7 (approving fees representing 40% of total settlement).

The Court should also approve the requested costs. As described in the accompanying declaration, Plaintiffs' Counsel's costs included substantial expenses for deposition transcripts, travel costs, and appellate printing and filing. (Brome Dec. ¶ 21.) Counsel also incurred e-discovery hosting costs, printing, postage, and legal research expenses. (*Id.*) These costs were incurred for the benefit of the Plaintiffs and are appropriately reimbursed from the settlement.

The Court should likewise approve the requested service award. The settlement provides

for $10,000 service award for the Named Plaintiff. The settlement agreements informed the Plaintiffs of the requested enhancement award, and none of the Plaintiffs objected to this enhancement. Such awards are routinely approved: "[i]ncentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal quotations omitted). Here, the proposed service award is modest compared to the relief made provided: the requested service award is approximately 10% of the average individual payment. *Cf. Potoski*, 2020 WL 207061, at **1, 6 (approving incentive payments to two named plaintiffs that were each approximately double the average individual payment). The requested service award is also within the range of reasonable awards. *See, e.g.*, *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, at *10 (E.D. Pa. Aug. 26, 2019) ($10,000.00 service payments granted); *Dominguez*, 2017 WL 2495406, at *9 (approving $10,000 service award). As the *Alvarez* court explained, in approving enhancements of $15,000, in an employment case such as this:

> Named Plaintiffs took significant risk by coming forward to represent the interests of their fellow employees. . . . Named Plaintiffs risked not only their reputation in the community, but also in their field and with their current employers—especially Named Plaintiff Alvarez, who is still employed by Defendant. . . . Named Plaintiffs also worked with counsel to provide background information about their employment, Defendant's policies and procedures, and the allegations in the Complaint. They were both deposed, and each attended multiple mediation sessions.

*Alvarez*, at *7 (citations omitted). These considerations warrant an enhancement award to Named Plaintiff Christa Fischer. As in *Alvarez*, the Named Plaintiff took a significant risk coming forward, she provided considerable assistance to counsel, she was deposed, she participated in a full-day settlement conference; all this work directly benefited the other Plaintiffs by leading to the extremely favorable result here. The Court should approve the requested award.

21

**D.  The Settlement Does Not Frustrate FLSA Implementation**

The final consideration is whether the proposed settlement would frustrate the FLSA's implementation. The common problems courts find under this factor are overbroad releases or restrictive confidentiality provisions. This settlement does not suffer from these defects. Although Plaintiffs and Plaintiffs' Counsel agree not to affirmatively disclose the settlement amount, and to file copies of the settlement agreements with the monetary amounts redacted, the remaining terms of the settlement are not confidential, and Plaintiffs can discuss the settlement with their colleagues. *Cf. Abouakil*, 2024 WL 2249824, at *3 (agreement prohibiting plaintiff from disclosing the existence and terms of the agreement in any way with any individual thwarted informational objectives of FLSA). The agreement provides that Defendant will contemporaneously file a motion to seal pursuant to Local Rule 5.1.5, which Plaintiffs will not oppose, but if the motion to seal is denied, that will not affect the remainder of the agreement. This limited confidentiality provision does not frustrate the purposes of the FLSA, since plaintiffs remain "free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media." *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014).

As set forth above, the scope of the release is appropriately limited to the claims brought in this case and is not a general release. *See, e.g.*, *Altnor*, 197 F. Supp. 3d at 764 ("Also the Settlement does not contain impermissibly broad release provisions, which avoids yet another common pitfall"). The scope of the release is appropriately narrow, and is clearly set out in the settlement agreement: "any and all claims brought in the Litigation, including for known and unknown overtime compensation, liquidated damages, and interest under the Fair Labor Standards Act, PMWA and PaWPCL arising from Plaintiff's employment with Defendant as a security specialist through the date of Plaintiff's execution of this Agreement." (Agreement ¶ 7.) This scope

of release is appropriate and does not allow "the employer to extract from the plaintiff a benefit beyond what he is compensated for in exchange for payment of the fair wages he is owed." *Solkoff*, 435 F. Supp. 3d at 660 (denying approval of FLSA settlement containing a general release).

This settlement agreement does not frustrate FLSA implementation and should be approved.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Parties request that the Court grant the joint motion for settlement approval in full.

Dated: November 5, 2024

NICHOLS KASTER, PLLP

By: s/ *Daniel Brome*
Daniel Brome *(Pro Hac Vice)*
California Bar No. 278915
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7234
dbrome@nks.com

Rachhana T. Srey *(Pro Hac Vice)*
MN Bar No. 340113
4700 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Telephone: (612) 256-3200
srey@nka.com

Scott M. Pollins (PA ID No. 76334)
Pollins Law
303 W. Lancaster Ave., Suite 1C
Wayne, PA 19087
Telephone: (610)-896-9909
scott@pollinslaw.com

**ATTORNEYS FOR PLAINTIFF CHRISTA FISCHER and the FLSA COLLECTIVE**

Dated: November 5, 2024

FEDERAL EXPRESS CORPORATION

By: s/ *Christopher M. Ahearn*
Christopher Ahearn, Lead Counsel *(Pro Hac Vice)*
TN BPR # 040043; Cal. Bar # 239089
California Bar No. 239089
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN 38125
(901) 275-7015
christopher.ahearn@fedex.com

Brandon D. Pettes, Sr. Counsel *(Pro Hac Vice)*
TN BPR #31264
3620 Hacks Cross Road
Building B, Third Floor
Memphis, Tennessee 38125
(901)434-8537
brandon.pettes@fedex.com

**ATTORNEYS FOR DEFENDANT FEDERAL EXPERESS CORPORATION**


## CERTIFICATE OF SIGNATURE AUTHORIZATION

Pursuant to Rule 5.1.2(8)(c)(2), I hereby certify and represent that I obtained the consent of the above-listed signatories and parties prior to filing this document.

Dated: November 5, 2024                        *s/ Daniel Brome*
                                               Daniel Brome


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon all counsel of record utilizing the Court's electronic filing system on the 15th of October, 2024.

                                               *s/ Daniel Brome*
                                               Daniel Brome