# EXHIBIT 1

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTA B. FISCHER,
Individually and on Behalf of Others
Similarly Situated Employees,

     Plaintiff,

v.                                  Case No.: 5:19-cv-04924-JMG

FEDERAL EXPRESS CORPORATION,

     Defendant.

## SETTLEMENT AND RELEASE AGREEMENT

Plaintiff Robert Dunbar ("Plaintiff"), and Federal Express Corporation ("FedEx" or "Defendant") (collectively, "Parties") enter into this Settlement and Release Agreement ("Agreement") to resolve a bona fide dispute regarding wages allegedly owed under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("PaWPCL") and asserted in the above styled action (the "Litigation").

This Agreement is one of five individual agreements that collectively form a Global Settlement in this matter. The Global Settlement includes Plaintiff and the four (4) other Plaintiffs who opted in to the above-entitled matter: Christa Fischer (the Named Plaintiff), Randy Fischer, Robert Dunbar, William Sturtevant, and William Schroeder (collectively, "Plaintiffs").

The Parties agree to the following settlement terms:

1.  **Settlement Payment by Defendant.**  In consideration for the promises and releases Plaintiffs make in this and the other individual Agreements, Defendant will pay a gross total of $825,000.00, inclusive of attorneys' fees and costs (the "Global Settlement Amount"). No amount of the Global Settlement Amount will revert to Defendant; to the extent any settlement payments are uncashed, the Parties agree to work together to redistribute those amounts to Plaintiffs or to a suitable *cy pres* recipient. Defendant shall not be required to pay any portion of the Settlement Amount, unless and until each of the Plaintiffs have accepted and executed their release agreement.

2.  **Allocation and Settlement Offers.**  Plaintiffs' Counsel has calculated a reasonable allocation of settlement amounts among all Plaintiffs based upon Plaintiffs' damages analysis, which was based on the payroll and employment history data provided by Defendant, an assumption of 10 overtime hours per week, and each Plaintiff's consent filing date. Assuming the Court approves the Global Settlement, the total allocations are as follows:

| Last Name | First Name | Total Damages / Pro Rata Allocation | Named Plaintiff Service Payment | Total Allocation | Share of Attorneys' Fees/ Costs |
|---|---|---|---|---|---|
| Dunbar | Robert | $128,469.37 | | $128,469.37 | $84,506.05 |
| Fischer | Christa | $73,815.38 | $10,000.00 | $83,815.38 | $48,555.13 |
| Fischer | Randy | $237,935.14 | | $237,935.14 | $156,511.70 |
| Schroeder | William | $24,887.33 | | $24,887.33 | $16,370.67 |
| Sturtevant | William | $26,510.71 | | $26,510.71 | $17,438.52 |

3.  **Communication of Settlement Offers**. Plaintiffs' Counsel will distribute individualized Settlement Agreement and Release of Claims forms to Plaintiffs.

All Plaintiffs will be given five days from the date of distribution to accept their individual settlement offers by signing their settlement agreement.

4. **Method of Payment and Tax Treatment**.  Plaintiff will receive the settlement payment via one or two settlement check(s). As close to one half of Plaintiff's Pro Rata Allocation as is administratively possible (using wage payment calculations at a flat rate per workweek will be allocated as wages, and payroll taxes (as well as any other required deductions and contributions associated with a payment of wages) will be withheld from this amount, which will be reported on an IRS Form W-2. The balance of Plaintiff's Pro Rata Allocation shall constitute payment for liquidated damages under the FLSA, and payroll taxes will not be withheld from this amount, which will be reported on an IRS Form 1099-Misc, Box 3. All amounts allocated as attorneys' fees and costs will be paid to Counsel for Plaintiff and will be reported on an IRS Form 1099.  Plaintiffs' Counsel shall provide Defendants with an IRS Form W-9 for such payments.  All amounts allocated as service payments will be reported on an IRS Form 1099-Misc, Box 3.

5. **Service Payment.** In addition to the individual pro rata settlement allocation, the Parties agree to allocate a service payment in the amount of $10,000.00 to Christa Fischer, the Named Plaintiff, for her time and effort in litigating this case and securing this settlement. As part of the motion for approval, the Parties will ask the Court to approve this service payment. Any portion of the service payment not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

6. **Attorneys' Fees and Costs**. As part of the Global Settlement, Defendant hereby agrees to pay Plaintiffs' Counsel a total of $323,382.07 ("Attorneys' Fees and Costs Payment") in exchange for Plaintiffs' release from any and all liability related to any attorneys' fees and costs incurred by Plaintiffs in this matter.  The Attorneys' Fees and Costs Payment resolves all claims for attorneys' fees and costs from Nichols Kaster, Pollins Law, the Law Office of Peter T. Nichol, and Apollo Law; Plaintiffs and Plaintiffs' Counsel jointly and severally represent and warrant to Defendant that there are no attorneys beyond those named here who have claims for fees or costs arising out of the Litigation or the settlement contemplated hereby. Any portion of the attorneys' fees and costs not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

7. **Scope and Effect of the Release**. In exchange for the settlement payment of $128,469.37, Plaintiff knowingly, voluntarily, and completely releases Defendant Federal Express Corporation, and their past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions and successors, and each of their respective agents, employees, owners, members, officers, directors, principals, board members, legal representatives, transferees, assigns and insureds ("Releasees") from any and all claims brought in the Litigation, including for known and unknown overtime compensation, liquidated damages, and interest under the Fair Labor Standards Act, PMWA and PaWPCL arising from Plaintiff's employment with Defendant as a security specialist through the date of Plaintiff's execution of this Agreement.

8. **Fair and Reasonable Compromise**. The Parties agree that this Agreement represents a fair and reasonable compromise of a bona fide dispute regarding Plaintiffs' entitlement to overtime compensation and other relief under the FLSA, the PMWA, and the PaWPCA. The Parties agree to submit this Agreement for Court approval, and agree that the settlement will not become operative until the Court grants approval of it and the settlement becomes effective.

9. **No Admissions.** Defendant denies the allegations in this Litigation and denies it engaged in any wrongdoing or violation of law. Defendant further specifically denies Plaintiffs' claims as to liability and remedies, and expressly reserves the right to challenge all such claims and allegations upon all procedural and substantive grounds, including the assertion of any and all defenses, if the Court does not approve this Agreement. Accordingly, nothing in this settlement or Agreement is intended to be construed as an admission by Defendant that the claims in the Litigation have merit, that Defendant has any liability to the Plaintiffs, or an admission by the Plaintiffs that Defendant's defenses in the Litigation have merit. By entering into this Agreement, none of the Parties admits the allegations or contentions of any other party, and each party is entering into this Agreement for the sole purpose of resolving this matter and avoiding the time and expense incident to further Litigation. Except for purposes of this settlement, neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by Defendant of any fault, wrongdoing or liability whatsoever.

10. **Motion for FLSA Approval and Dismissal of Plaintiffs' Claims**. Within five days of the receipt of all signed Release of Claims forms, the Parties will file a joint motion for approval of FLSA settlement. Plaintiffs' Counsel will draft the motion and provide it and all supporting documents to Defendants in time to allow Defendants five business days to review and discuss any proposed changes. The Parties will work cooperatively to draft and file the motion. Except as set out in Paragraph 11, *infra*, if the Court does not approve any material terms of the settlement as set forth herein, the Parties will work in good faith to conform the terms of the Agreement to resolve the Court's objections. The Parties will jointly request that upon Court approval, the claims of all Plaintiffs shall be dismissed with prejudice, and they shall receive their settlement allocation.

11. **Sealing and Confidentiality.** Plaintiff agrees not to communicate the dollar amounts of their settlement payments to anyone besides immediate family members, tax preparers, financial advisors, or attorneys. Plaintiff shall inform these recipients of the Agreement's confidentiality provisions and shall direct her immediate family members, tax preparers, financial advisors, or attorneys not to disclose the terms of the Agreement beyond disclosures necessary to comply with tax reporting obligations, court orders, administrative orders, subpoenas, or other legal obligations. In response to questions about this Litigation, Plaintiff agrees to only state that the matter has resolved or settled, without disclosing the amount of such settlement. Plaintiffs agree to file the joint motion for FLSA settlement approval with the settlement amounts redacted in both the brief and any accompanying attachments. Defendant will contemporaneously file a motion

requesting to seal those amounts pursuant to Local Rule 5.1.5, which Plaintiffs will not oppose. To the extent the Court denies in whole or in part the motion to seal, or denies approval of the confidentiality provision, such ruling on sealing will not affect the remainder of the Agreement.

12. **Timing of Payment and Check Cashing Period**. Within twenty-one (21) days of the Court granting the motion for approval, Defendant shall provide Plaintiffs' counsel with Plaintiffs' settlement checks via FedEx tracked delivery. Plaintiffs' counsel shall be solely responsible for distributing the settlement amounts to Plaintiffs. Plaintiffs shall have 180 days to cash or otherwise negotiate their checks, at which time they shall be deemed null and void. Likewise, within twenty-one (21) days of the Court's approval, Defendant shall pay the amount of $323,382.07 for Plaintiffs' attorneys' fees and costs via check to Nichols Kaster. Plaintiffs' counsel shall be solely responsible for allocating and distributing the fee and cost amounts.

13. **Tax Obligations**. Defendant will be solely responsible, separate and apart from the Gross Settlement Amount, for paying the employers' share of any amounts due to any governmental taxing authority because of the settlement payment. Plaintiff and Plaintiffs' Counsel shall be solely responsible for their own tax reporting and payment of their own share of taxes, deductions, or withholdings that may be associated with any payment under this Agreement. Plaintiff is obligated to obtain independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments received pursuant to this Agreement. Nothing in this Agreement shall be construed as Defendant,

Defendant's Counsel, or Plaintiffs' Counsel providing any advice regarding the payment of taxes or the tax consequences of Plaintiff's participation in any portion of this Agreement.

14. **Interpretation and Severability**.  Should any court of competent jurisdiction declare any provision of this Agreement unenforceable, all other provisions of this Agreement shall be unaffected and will remain enforceable.  The Parties agree that this Agreement is subject to and governed by the laws of the State of Pennsylvania and that the exclusive venue of any suit to enforce the terms of this Agreement shall be in the state or federal courts of Pennsylvania.

15. **Amendment**.  This Agreement may not be modified or amended except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

16. **Cooperation and Drafting.**  The Parties have cooperated in the negotiation and preparation of this Agreement.  Accordingly, this Agreement shall not be construed against any Party on the basis that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Agreement.  The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

17. **Counterparts.**  This Agreement may be executed in one or more counterparts, including by email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

18. **Binding On All Parties, Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of all Parties and their heirs, beneficiaries, executors, administrators, successors, transferees, and assigns.

19. **Nullification of Settlement and Agreement.** In the event: (a) the Court does not approve this Agreement, or the settlement as provided herein, or (b) this Agreement or the settlement as provided herein does not become final for any reason, the settlement and this Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement. In addition, Defendant retains the right to void the settlement and this Agreement if all Plaintiffs do not accept their settlement offer and timely execute and return their Release Form.

Date: 10/16/2024   By: _____
Rachhana T. Srey
Nichols Kaster, PLLP
Attorney for Plaintiffs

Date: 10/14/24 By: _____
Brandon Pettes
Sr. Counsel, Legal Dept.
Federal Express Corporation

Date: 10/15/2024   By: _____
Robert Dunbar
Plaintiff

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTA B. FISCHER,
Individually and on Behalf of Others
Similarly Situated Employees,

      Plaintiff,

v.                                              Case No.: 5:19-cv-04924-JMG

FEDERAL EXPRESS CORPORATION,

      Defendant.

## SETTLEMENT AND RELEASE AGREEMENT

Christa Fischer ("Named Plaintiff"), and Federal Express Corporation ("FedEx" or "Defendant") (collectively, "Parties") enter into this Settlement and Release Agreement ("Agreement") to resolve a bona fide dispute regarding wages allegedly owed under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("PaWPCL") and asserted in the above styled action (the "Litigation").

This Agreement is one of five individual agreements that collectively form a Global Settlement in this matter. The Global Settlement includes Named Plaintiff and the four (4) other Plaintiffs who opted in to the above-entitled matter: Christa Fischer, Randy Fischer, Robert Dunbar, William Sturtevant, and William Schroeder (collectively, "Plaintiffs").

The Parties agree to the following settlement terms:

1.  **Settlement Payment by Defendant.** In consideration for the promises and releases Plaintiffs make in this and the other individual Agreements, Defendant will pay a gross total of $825,000.00, inclusive of attorneys' fees and costs (the "Global Settlement Amount"). No amount of the Global Settlement Amount will revert to Defendant; to the extent any settlement payments are uncashed, the Parties agree to work together to redistribute those amounts to Plaintiffs or to a suitable *cy pres* recipient. Defendant shall not be required to pay any portion of the Settlement Amount, unless and until each of the Plaintiffs have accepted and executed their release agreement.

2.  **Allocation and Settlement Offers.** Plaintiffs' Counsel has calculated a reasonable allocation of settlement amounts among all Plaintiffs based upon Plaintiffs' damages analysis, which was based on the payroll and employment history data provided by Defendant, an assumption of 10 overtime hours per week, and each Plaintiff's consent filing date. Assuming the Court approves the Global Settlement, the total allocations are as follows:

| Last Name | First Name | Total Damages / Pro Rata Allocation | Named Plaintiff Service Payment | Total Allocation | Share of Attorneys' Fees/ Costs |
|---|---|---|---|---|---|
| Dunbar | Robert | $128,469.37 | | $128,469.37 | $84,506.05 |
| Fischer | Christa | $73,815.38 | $10,000.00 | $83,815.38 | $48,555.13 |
| Fischer | Randy | $237,935.14 | | $237,935.14 | $156,511.70 |
| Schroeder | William | $24,887.33 | | $24,887.33 | $16,370.67 |
| Sturtevant | William | $26,510.71 | | $26,510.71 | $17,438.52 |

3.  **Communication of Settlement Offers.** Plaintiffs' Counsel will distribute individualized Settlement Agreement and Release of Claims forms to Plaintiffs.

All Plaintiffs will be given five days from the date of distribution to accept their individual settlement offers by signing their settlement agreement.

4. **Method of Payment and Tax Treatment**. Named Plaintiff will receive the settlement payment via one or two settlement check(s). As close to one half of Named Plaintiff's Pro Rata Allocation as is administratively possible (using wage payment calculations at a flat rate per workweek will be allocated as wages, and payroll taxes (as well as any other required deductions and contributions associated with a payment of wages) will be withheld from this amount, which will be reported on an IRS Form W-2. The balance of Named Plaintiff's Pro Rata Allocation shall constitute payment for liquidated damages under the FLSA, and payroll taxes will not be withheld from this amount, which will be reported on an IRS Form 1099-Misc, Box 3. All amounts allocated as attorneys' fees and costs will be paid to Counsel for Named Plaintiff and will be reported on an IRS Form 1099. Named Plaintiffs' Counsel shall provide Defendants with an IRS Form W-9 for such payments. All amounts allocated as service payments will be reported on an IRS Form 1099-Misc, Box 3.

5. **Service Payment.** In addition to the individual pro rata settlement allocation, the Parties agree to allocate a service payment in the amount of $10,000.00 to Christa Fischer, the Named Plaintiff, for her time and effort in litigating this case and securing this settlement. As part of the motion for approval, the Parties will ask the Court to approve this service payment. Any portion of the service payment not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

6. **Attorneys' Fees and Costs**. As part of the Global Settlement, Defendant hereby agrees to pay Plaintiffs' Counsel a total of $323,382.07 ("Attorneys' Fees and Costs Payment") in exchange for Plaintiffs' release from any and all liability related to any attorneys' fees and costs incurred by Plaintiffs in this matter. The Attorneys' Fees and Costs Payment resolves all claims for attorneys' fees and costs from Nichols Kaster, Pollins Law, the Law Office of Peter T. Nichol, and Apollo Law; Plaintiffs and Plaintiffs' Counsel jointly and severally represent and warrant to Defendant that there are no attorneys beyond those named here who have claims for fees or costs arising out of the Litigation or the settlement contemplated hereby. Any portion of the attorneys' fees and costs not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

7. **Scope and Effect of the Release**. In exchange for the settlement payment of $73,815.38, Named Plaintiff knowingly, voluntarily, and completely releases Defendant Federal Express Corporation, and their past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions and successors, and each of their respective agents, employees, owners, members, officers, directors, principals, board members, legal representatives, transferees, assigns and insureds ("Releasees") from any and all claims brought in the Litigation, including for known and unknown overtime compensation, liquidated damages, and interest under the Fair Labor Standards Act, PMWA and PaWPCL arising from Plaintiff's employment with Defendant as a security specialist through the date of Plaintiff's execution of this Agreement.

8. **Fair and Reasonable Compromise**. The Parties agree that this Agreement represents a fair and reasonable compromise of a bona fide dispute regarding Plaintiffs' entitlement to overtime compensation and other relief under the FLSA, the PMWA, and the PaWPCA. The Parties agree to submit this Agreement for Court approval, and agree that the settlement will not become operative until the Court grants approval of it and the settlement becomes effective.

9. **No Admissions.**  Defendant denies the allegations in this Litigation and denies it engaged in any wrongdoing or violation of law.  Defendant further specifically denies Plaintiffs' claims as to liability and remedies, and expressly reserves the right to challenge all such claims and allegations upon all procedural and substantive grounds, including the assertion of any and all defenses, if the Court does not approve this Agreement.  Accordingly, nothing in this settlement or Agreement is intended to be construed as an admission by Defendant that the claims in the Litigation have merit, that Defendant has any liability to the Plaintiffs, or an admission by the Plaintiffs that Defendant's defenses in the Litigation have merit.  By entering into this Agreement, none of the Parties admits the allegations or contentions of any other party, and each party is entering into this Agreement for the sole purpose of resolving this matter and avoiding the time and expense incident to further Litigation.  Except for purposes of this settlement, neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by Defendant of any fault, wrongdoing or liability whatsoever.

10. **Motion for FLSA Approval and Dismissal of Plaintiffs' Claims.** Within five days of the receipt of all signed Release of Claims forms, the Parties will file a joint motion for approval of FLSA settlement. Plaintiffs' Counsel will draft the motion and provide it and all supporting documents to Defendants in time to allow Defendants five business days to review and discuss any proposed changes. The Parties will work cooperatively to draft and file the motion. Except as set out in Paragraph 11, *infra*, if the Court does not approve any material terms of the settlement as set forth herein, the Parties will work in good faith to conform the terms of the Agreement to resolve the Court's objections. The Parties will jointly request that upon Court approval, the claims of all Plaintiffs shall be dismissed with prejudice, and they shall receive their settlement allocation.

11. **Sealing and Confidentiality.** Named Plaintiff agrees not to communicate the dollar amounts of their settlement payments to anyone besides immediate family members, tax preparers, financial advisors, or attorneys. Named Plaintiff shall inform these recipients of the Agreement's confidentiality provisions and shall direct her immediate family members, tax preparers, financial advisors, or attorneys not to disclose the terms of the Agreement beyond disclosures necessary to comply with tax reporting obligations, court orders, administrative orders, subpoenas, or other legal obligations. In response to questions about this Litigation, Named Plaintiff agrees to only state that the matter has resolved or settled, without disclosing the amount of such settlement. Plaintiffs agree to file the joint motion for FLSA settlement approval with the settlement amounts redacted in both the brief and any accompanying attachments. Defendant will

contemporaneously file a motion requesting to seal those amounts pursuant to Local Rule 5.1.5, which Plaintiffs will not oppose. To the extent the Court denies in whole or in part the motion to seal, or denies approval of the confidentiality provision, such ruling on sealing will not affect the remainder of the Agreement.

12. **Timing of Payment and Check Cashing Period**. Within twenty-one (21) days of the Court granting the motion for approval, Defendant shall provide Plaintiffs' counsel with Plaintiffs' settlement checks via FedEx tracked delivery. Plaintiffs' counsel shall be solely responsible for distributing the settlement amounts to Plaintiffs. Plaintiffs shall have 180 days to cash or otherwise negotiate their checks, at which time they shall be deemed null and void. Likewise, within twenty-one (21) days of the Court's approval, Defendant shall pay the amount of $323,382.07 for Plaintiffs' attorneys' fees and costs via check to Nichols Kaster. Plaintiffs' counsel shall be solely responsible for allocating and distributing the fee and cost amounts.

13. **Tax Obligations**.  Defendant will be solely responsible, separate and apart from the Gross Settlement Amount, for paying the employers' share of any amounts due to any governmental taxing authority because of the settlement payment. Plaintiff and Plaintiffs' Counsel shall be solely responsible for their own tax reporting and payment of their own share of taxes, deductions, or withholdings that may be associated with any payment under this Agreement.  Named Plaintiff is obligated to obtain independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments received pursuant to this Agreement. Nothing in this Agreement shall be construed as Defendant,

Defendant's Counsel, or Plaintiffs' Counsel providing any advice regarding the payment of taxes or the tax consequences of Named Plaintiff's participation in any portion of this Agreement.

14. **Interpretation and Severability**.  Should any court of competent jurisdiction declare any provision of this Agreement unenforceable, all other provisions of this Agreement shall be unaffected and will remain enforceable.  The Parties agree that this Agreement is subject to and governed by the laws of the State of Pennsylvania and that the exclusive venue of any suit to enforce the terms of this Agreement shall be in the state or federal courts of Pennsylvania.

15. **Amendment**.  This Agreement may not be modified or amended except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

16. **Cooperation and Drafting.**  The Parties have cooperated in the negotiation and preparation of this Agreement.  Accordingly, this Agreement shall not be construed against any Party on the basis that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Agreement.  The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

17. **Counterparts.**  This Agreement may be executed in one or more counterparts, including by email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

18. **Binding On All Parties, Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of all Parties and their heirs, beneficiaries, executors, administrators, successors, transferees, and assigns.

19. **Nullification of Settlement and Agreement.** In the event: (a) the Court does not approve this Agreement, or the settlement as provided herein, or (b) this Agreement or the settlement as provided herein does not become final for any reason, the settlement and this Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement. In addition, Defendant retains the right to void the settlement and this Agreement if all Plaintiffs do not accept their settlement offer and timely execute and return their Release Form.

Date: 10/16/2024  By: _____
Rachhana T. Srey
Nichols Kaster, PLLP
Attorney for Plaintiffs

Date: 10/14/24 By: _____
Brandon Pettes
Sr. Counsel, Legal Dept.
Federal Express Corporation

Date: 10/15/2024  By: _____
Christa Fischer
Plaintiff

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTA B. FISCHER,
Individually and on Behalf of Others
Similarly Situated Employees,

     Plaintiff,

v.                              Case No.: 5:19-cv-04924-JMG

FEDERAL EXPRESS CORPORATION,

     Defendant.

## SETTLEMENT AND RELEASE AGREEMENT

Plaintiff Randy Fischer ("Plaintiff"), and Federal Express Corporation ("FedEx" or "Defendant") (collectively, "Parties") enter into this Settlement and Release Agreement ("Agreement") to resolve a bona fide dispute regarding wages allegedly owed under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("PaWPCL") and asserted in the above styled action (the "Litigation").

This Agreement is one of five individual agreements that collectively form a Global Settlement in this matter. The Global Settlement includes Plaintiff and the four (4) other Plaintiffs who opted in to the above-entitled matter: Christa Fischer (the Named Plaintiff), Randy Fischer, Robert Dunbar, William Sturtevant, and William Schroeder (collectively, "Plaintiffs").

The Parties agree to the following settlement terms:

1. **Settlement Payment by Defendant.** In consideration for the promises and releases Plaintiffs make in this and the other individual Agreements, Defendant will pay a gross total of $825,000.00, inclusive of attorneys' fees and costs (the "Global Settlement Amount"). No amount of the Global Settlement Amount will revert to Defendant; to the extent any settlement payments are uncashed, the Parties agree to work together to redistribute those amounts to Plaintiffs or to a suitable *cy pres* recipient. Defendant shall not be required to pay any portion of the Settlement Amount, unless and until each of the Plaintiffs have accepted and executed their release agreement.

2. **Allocation and Settlement Offers.** Plaintiffs' Counsel has calculated a reasonable allocation of settlement amounts among all Plaintiffs based upon Plaintiffs' damages analysis, which was based on the payroll and employment history data provided by Defendant, an assumption of 10 overtime hours per week, and each Plaintiff's consent filing date. Assuming the Court approves the Global Settlement, the total allocations are as follows:

| Last Name | First Name | Total Damages / Pro Rata Allocation | Named Plaintiff Service Payment | Total Allocation | Share of Attorneys' Fees/ Costs |
|---|---|---|---|---|---|
| Dunbar | Robert | $128,469.37 | | $128,469.37 | $84,506.05 |
| Fischer | Christa | $73,815.38 | $10,000.00 | $83,815.38 | $48,555.13 |
| Fischer | Randy | $237,935.14 | | $237,935.14 | $156,511.70 |
| Schroeder | William | $24,887.33 | | $24,887.33 | $16,370.67 |
| Sturtevant | William | $26,510.71 | | $26,510.71 | $17,438.52 |

3. **Communication of Settlement Offers.** Plaintiffs' Counsel will distribute individualized Settlement Agreement and Release of Claims forms to Plaintiffs.

All Plaintiffs will be given five days from the date of distribution to accept their individual settlement offers by signing their settlement agreement.

4. **Method of Payment and Tax Treatment**.  Plaintiff will receive the settlement payment via one or two settlement check(s). As close to one half of Plaintiff's Pro Rata Allocation as is administratively possible (using wage payment calculations at a flat rate per workweek will be allocated as wages, and payroll taxes (as well as any other required deductions and contributions associated with a payment of wages) will be withheld from this amount, which will be reported on an IRS Form W-2. The balance of Plaintiff's Pro Rata Allocation shall constitute payment for liquidated damages under the FLSA, and payroll taxes will not be withheld from this amount, which will be reported on an IRS Form 1099-Misc, Box 3. All amounts allocated as attorneys' fees and costs will be paid to Counsel for Plaintiff and will be reported on an IRS Form 1099.  Plaintiffs' Counsel shall provide Defendants with an IRS Form W-9 for such payments.  All amounts allocated as service payments will be reported on an IRS Form 1099-Misc, Box 3.

5. **Service Payment.** In addition to the individual pro rata settlement allocation, the Parties agree to allocate a service payment in the amount of $10,000.00 to Christa Fischer, the Named Plaintiff, for her time and effort in litigating this case and securing this settlement. As part of the motion for approval, the Parties will ask the Court to approve this service payment. Any portion of the service payment not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

6.  **Attorneys' Fees and Costs**. As part of the Global Settlement, Defendant hereby agrees to pay Plaintiffs' Counsel a total of $323,382.07 ("Attorneys' Fees and Costs Payment") in exchange for Plaintiffs' release from any and all liability related to any attorneys' fees and costs incurred by Plaintiffs in this matter.  The Attorneys' Fees and Costs Payment resolves all claims for attorneys' fees and costs from Nichols Kaster, Pollins Law, the Law Office of Peter T. Nichol, and Apollo Law; Plaintiffs and Plaintiffs' Counsel jointly and severally represent and warrant to Defendant that there are no attorneys beyond those named here who have claims for fees or costs arising out of the Litigation or the settlement contemplated hereby. Any portion of the attorneys' fees and costs not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

7.  **Scope and Effect of the Release**. In exchange for the settlement payment of $237,935.14, Plaintiff knowingly, voluntarily, and completely releases Defendant Federal Express Corporation, and their past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions and successors, and each of their respective agents, employees, owners, members, officers, directors, principals, board members, legal representatives, transferees, assigns and insureds ("Releasees") from any and all claims brought in the Litigation, including for known and unknown overtime compensation, liquidated damages, and interest under the Fair Labor Standards Act, PMWA and PaWPCL arising from Plaintiff's employment with Defendant as a security specialist through the date of Plaintiff's execution of this Agreement.

8. **Fair and Reasonable Compromise**. The Parties agree that this Agreement represents a fair and reasonable compromise of a bona fide dispute regarding Plaintiffs' entitlement to overtime compensation and other relief under the FLSA, the PMWA, and the PaWPCA. The Parties agree to submit this Agreement for Court approval, and agree that the settlement will not become operative until the Court grants approval of it and the settlement becomes effective.

9. **No Admissions.**  Defendant denies the allegations in this Litigation and denies it engaged in any wrongdoing or violation of law.  Defendant further specifically denies Plaintiffs' claims as to liability and remedies, and expressly reserves the right to challenge all such claims and allegations upon all procedural and substantive grounds, including the assertion of any and all defenses, if the Court does not approve this Agreement.  Accordingly, nothing in this settlement or Agreement is intended to be construed as an admission by Defendant that the claims in the Litigation have merit, that Defendant has any liability to the Plaintiffs, or an admission by the Plaintiffs that Defendant's defenses in the Litigation have merit.  By entering into this Agreement, none of the Parties admits the allegations or contentions of any other party, and each party is entering into this Agreement for the sole purpose of resolving this matter and avoiding the time and expense incident to further Litigation.  Except for purposes of this settlement, neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by Defendant of any fault, wrongdoing or liability whatsoever.

10. **Motion for FLSA Approval and Dismissal of Plaintiffs' Claims**. Within five days of the receipt of all signed Release of Claims forms, the Parties will file a joint motion for approval of FLSA settlement. Plaintiffs' Counsel will draft the motion and provide it and all supporting documents to Defendants in time to allow Defendants five business days to review and discuss any proposed changes. The Parties will work cooperatively to draft and file the motion. Except as set out in Paragraph 11, *infra*, if the Court does not approve any material terms of the settlement as set forth herein, the Parties will work in good faith to conform the terms of the Agreement to resolve the Court's objections. The Parties will jointly request that upon Court approval, the claims of all Plaintiffs shall be dismissed with prejudice, and they shall receive their settlement allocation.

11. **Sealing and Confidentiality.** Plaintiff agrees not to communicate the dollar amounts of their settlement payments to anyone besides immediate family members, tax preparers, financial advisors, or attorneys. Plaintiff shall inform these recipients of the Agreement's confidentiality provisions and shall direct her immediate family members, tax preparers, financial advisors, or attorneys not to disclose the terms of the Agreement beyond disclosures necessary to comply with tax reporting obligations, court orders, administrative orders, subpoenas, or other legal obligations. In response to questions about this Litigation, Plaintiff agrees to only state that the matter has resolved or settled, without disclosing the amount of such settlement. Plaintiffs agree to file the joint motion for FLSA settlement approval with the settlement amounts redacted in both the brief and any accompanying attachments. Defendant will contemporaneously file a motion

requesting to seal those amounts pursuant to Local Rule 5.1.5, which Plaintiffs will not oppose. To the extent the Court denies in whole or in part the motion to seal, or denies approval of the confidentiality provision, such ruling on sealing will not affect the remainder of the Agreement.

12. **Timing of Payment and Check Cashing Period**. Within twenty-one (21) days of the Court granting the motion for approval, Defendant shall provide Plaintiffs' counsel with Plaintiffs' settlement checks via FedEx tracked delivery. Plaintiffs' counsel shall be solely responsible for distributing the settlement amounts to Plaintiffs. Plaintiffs shall have 180 days to cash or otherwise negotiate their checks, at which time they shall be deemed null and void. Likewise, within twenty-one (21) days of the Court's approval, Defendant shall pay the amount of $323,382.07 for Plaintiffs' attorneys' fees and costs via check to Nichols Kaster. Plaintiffs' counsel shall be solely responsible for allocating and distributing the fee and cost amounts.

13. **Tax Obligations**.  Defendant will be solely responsible, separate and apart from the Gross Settlement Amount, for paying the employers' share of any amounts due to any governmental taxing authority because of the settlement payment. Plaintiff and Plaintiffs' Counsel shall be solely responsible for their own tax reporting and payment of their own share of taxes, deductions, or withholdings that may be associated with any payment under this Agreement.  Plaintiff is obligated to obtain independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments received pursuant to this Agreement. Nothing in this Agreement shall be construed as Defendant,

Defendant's Counsel, or Plaintiffs' Counsel providing any advice regarding the payment of taxes or the tax consequences of Plaintiff's participation in any portion of this Agreement.

14. **Interpretation and Severability**.  Should any court of competent jurisdiction declare any provision of this Agreement unenforceable, all other provisions of this Agreement shall be unaffected and will remain enforceable.  The Parties agree that this Agreement is subject to and governed by the laws of the State of Pennsylvania and that the exclusive venue of any suit to enforce the terms of this Agreement shall be in the state or federal courts of Pennsylvania.

15. **Amendment**.  This Agreement may not be modified or amended except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

16. **Cooperation and Drafting.**  The Parties have cooperated in the negotiation and preparation of this Agreement.  Accordingly, this Agreement shall not be construed against any Party on the basis that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Agreement.  The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

17. **Counterparts.**  This Agreement may be executed in one or more counterparts, including by email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

18. **Binding On All Parties, Successors and Assigns.**  This Agreement shall be

    binding upon, and inure to the benefit of all Parties and their heirs, beneficiaries,

    executors, administrators, successors, transferees, and assigns.

19. **Nullification of Settlement and Agreement.**  In the event: (a) the Court does not

    approve this Agreement, or the settlement as provided herein, or (b) this

    Agreement or the settlement as provided herein does not become final for any

    reason, the settlement and this Agreement shall be null and void and the Parties

    shall be returned to their respective statuses as of the date immediately prior to the

    execution of this Agreement.  In addition, Defendant retains the right to void the

    settlement and this Agreement if all Plaintiffs do not accept their settlement offer

    and timely execute and return their Release Form.


Date: 10/16/2024  By: _Rachhana T. Srey_
Rachhana T. Srey
Nichols Kaster, PLLP
Attorney for Plaintiffs

Date: 10/14/24  By: _B. Pettes_
Brandon Pettes
Sr. Counsel, Legal Dept.
Federal Express Corporation


Date: 10/15/2024  By: _Randy Fisher_
Randy Fisher
Plaintiff

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTA B. FISCHER,
Individually and on Behalf of Others
Similarly Situated Employees,

      Plaintiff,

v.                         Case No.: 5:19-cv-04924-JMG

FEDERAL EXPRESS CORPORATION,

      Defendant.

**SETTLEMENT AND RELEASE AGREEMENT**

      Plaintiff William Schroeder ("Plaintiff"), and Federal Express Corporation ("FedEx" or "Defendant") (collectively, "Parties") enter into this Settlement and Release Agreement ("Agreement") to resolve a bona fide dispute regarding wages allegedly owed under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("PaWPCL") and asserted in the above styled action (the "Litigation").

      This Agreement is one of five individual agreements that collectively form a Global Settlement in this matter. The Global Settlement includes Plaintiff and the four (4) other Plaintiffs who opted in to the above-entitled matter: Christa Fischer (the Named Plaintiff), Randy Fischer, Robert Dunbar, William Sturtevant, and William Schroeder (collectively, "Plaintiffs").

      The Parties agree to the following settlement terms:

1.   **Settlement Payment by Defendant.**  In consideration for the promises and
releases Plaintiffs make in this and the other individual Agreements, Defendant
will pay a gross total of $825,000.00, inclusive of attorneys' fees and costs (the
"Global Settlement Amount"). No amount of the Global Settlement Amount will
revert to Defendant; to the extent any settlement payments are uncashed, the
Parties agree to work together to redistribute those amounts to Plaintiffs or to a
suitable *cy pres* recipient. Defendant shall not be required to pay any portion of
the Settlement Amount, unless and until each of the Plaintiffs have accepted and
executed their release agreement.

2.   **Allocation and Settlement Offers.**  Plaintiffs' Counsel has calculated a
reasonable allocation of settlement amounts among all Plaintiffs based upon
Plaintiffs' damages analysis, which was based on the payroll and employment
history data provided by Defendant, an assumption of 10 overtime hours per
week, and each Plaintiff's consent filing date. Assuming the Court approves the
Global Settlement, the total allocations are as follows:

| Last Name | First Name | Total Damages / Pro Rata Allocation | Named Plaintiff Service Payment | Total Allocation | Share of Attorneys' Fees/ Costs |
|---|---|---|---|---|---|
| Dunbar | Robert | $128,469.37 | | $128,469.37 | $84,506.05 |
| Fischer | Christa | $73,815.38 | $10,000.00 | $83,815.38 | $48,555.13 |
| Fischer | Randy | $237,935.14 | | $237,935.14 | $156,511.70 |
| Schroeder | William | $24,887.33 | | $24,887.33 | $16,370.67 |
| Sturtevant | William | $26,510.71 | | $26,510.71 | $17,438.52 |

3.   **Communication of Settlement Offers**. Plaintiffs' Counsel will distribute
individualized Settlement Agreement and Release of Claims forms to Plaintiffs.

2

All Plaintiffs will be given five days from the date of distribution to accept their individual settlement offers by signing their settlement agreement.

4. **Method of Payment and Tax Treatment**. Plaintiff will receive the settlement payment via one or two settlement check(s). As close to one half of Plaintiff's Pro Rata Allocation as is administratively possible (using wage payment calculations at a flat rate per workweek will be allocated as wages, and payroll taxes (as well as any other required deductions and contributions associated with a payment of wages) will be withheld from this amount, which will be reported on an IRS Form W-2. The balance of Plaintiff's Pro Rata Allocation shall constitute payment for liquidated damages under the FLSA, and payroll taxes will not be withheld from this amount, which will be reported on an IRS Form 1099-Misc, Box 3. All amounts allocated as attorneys' fees and costs will be paid to Counsel for Plaintiff and will be reported on an IRS Form 1099. Plaintiffs' Counsel shall provide Defendants with an IRS Form W-9 for such payments. All amounts allocated as service payments will be reported on an IRS Form 1099-Misc, Box 3.

5. **Service Payment.** In addition to the individual pro rata settlement allocation, the Parties agree to allocate a service payment in the amount of $10,000.00 to Christa Fischer, the Named Plaintiff, for her time and effort in litigating this case and securing this settlement. As part of the motion for approval, the Parties will ask the Court to approve this service payment. Any portion of the service payment not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

6. **Attorneys' Fees and Costs**. As part of the Global Settlement, Defendant hereby agrees to pay Plaintiffs' Counsel a total of $323,382.07 ("Attorneys' Fees and Costs Payment") in exchange for Plaintiffs' release from any and all liability related to any attorneys' fees and costs incurred by Plaintiffs in this matter. The Attorneys' Fees and Costs Payment resolves all claims for attorneys' fees and costs from Nichols Kaster, Pollins Law, the Law Office of Peter T. Nichol, and Apollo Law; Plaintiffs and Plaintiffs' Counsel jointly and severally represent and warrant to Defendant that there are no attorneys beyond those named here who have claims for fees or costs arising out of the Litigation or the settlement contemplated hereby. Any portion of the attorneys' fees and costs not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

7. **Scope and Effect of the Release**. In exchange for the settlement payment of $24,887.33, Plaintiff knowingly, voluntarily, and completely releases Defendant Federal Express Corporation, and their past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions and successors, and each of their respective agents, employees, owners, members, officers, directors, principals, board members, legal representatives, transferees, assigns and insureds ("Releasees") from any and all claims brought in the Litigation, including for known and unknown overtime compensation, liquidated damages, and interest under the Fair Labor Standards Act, PMWA and PaWPCL arising from Plaintiff's employment with Defendant as a security specialist through the date of Plaintiff's execution of this Agreement.

8. **Fair and Reasonable Compromise**. The Parties agree that this Agreement represents a fair and reasonable compromise of a bona fide dispute regarding Plaintiffs' entitlement to overtime compensation and other relief under the FLSA, the PMWA, and the PaWPCA. The Parties agree to submit this Agreement for Court approval, and agree that the settlement will not become operative until the Court grants approval of it and the settlement becomes effective.

9. **No Admissions.** Defendant denies the allegations in this Litigation and denies it engaged in any wrongdoing or violation of law. Defendant further specifically denies Plaintiffs' claims as to liability and remedies, and expressly reserves the right to challenge all such claims and allegations upon all procedural and substantive grounds, including the assertion of any and all defenses, if the Court does not approve this Agreement. Accordingly, nothing in this settlement or Agreement is intended to be construed as an admission by Defendant that the claims in the Litigation have merit, that Defendant has any liability to the Plaintiffs, or an admission by the Plaintiffs that Defendant's defenses in the Litigation have merit. By entering into this Agreement, none of the Parties admits the allegations or contentions of any other party, and each party is entering into this Agreement for the sole purpose of resolving this matter and avoiding the time and expense incident to further Litigation. Except for purposes of this settlement, neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by Defendant of any fault, wrongdoing or liability whatsoever.

10. **Motion for FLSA Approval and Dismissal of Plaintiffs' Claims**. Within five days of the receipt of all signed Release of Claims forms, the Parties will file a joint motion for approval of FLSA settlement. Plaintiffs' Counsel will draft the motion and provide it and all supporting documents to Defendants in time to allow Defendants five business days to review and discuss any proposed changes. The Parties will work cooperatively to draft and file the motion. Except as set out in Paragraph 11, *infra*, if the Court does not approve any material terms of the settlement as set forth herein, the Parties will work in good faith to conform the terms of the Agreement to resolve the Court's objections. The Parties will jointly request that upon Court approval, the claims of all Plaintiffs shall be dismissed with prejudice, and they shall receive their settlement allocation.

11. **Sealing and Confidentiality.** Plaintiff agrees not to communicate the dollar amounts of their settlement payments to anyone besides immediate family members, tax preparers, financial advisors, or attorneys. Plaintiff shall inform these recipients of the Agreement's confidentiality provisions and shall direct her immediate family members, tax preparers, financial advisors, or attorneys not to disclose the terms of the Agreement beyond disclosures necessary to comply with tax reporting obligations, court orders, administrative orders, subpoenas, or other legal obligations. In response to questions about this Litigation, Plaintiff agrees to only state that the matter has resolved or settled, without disclosing the amount of such settlement. Plaintiffs agree to file the joint motion for FLSA settlement approval with the settlement amounts redacted in both the brief and any accompanying attachments. Defendant will contemporaneously file a motion

6

requesting to seal those amounts pursuant to Local Rule 5.1.5, which Plaintiffs will not oppose. To the extent the Court denies in whole or in part the motion to seal, or denies approval of the confidentiality provision, such ruling on sealing will not affect the remainder of the Agreement.

12. **<u>Timing of Payment and Check Cashing Period</u>**. Within twenty-one (21) days of the Court granting the motion for approval, Defendant shall provide Plaintiffs' counsel with Plaintiffs' settlement checks via FedEx tracked delivery. Plaintiffs' counsel shall be solely responsible for distributing the settlement amounts to Plaintiffs. Plaintiffs shall have 180 days to cash or otherwise negotiate their checks, at which time they shall be deemed null and void. Likewise, within twenty-one (21) days of the Court's approval, Defendant shall pay the amount of $323,382.07 for Plaintiffs' attorneys' fees and costs via check to Nichols Kaster. Plaintiffs' counsel shall be solely responsible for allocating and distributing the fee and cost amounts.

13. **<u>Tax Obligations</u>**.  Defendant will be solely responsible, separate and apart from the Gross Settlement Amount, for paying the employers' share of any amounts due to any governmental taxing authority because of the settlement payment. Plaintiff and Plaintiffs' Counsel shall be solely responsible for their own tax reporting and payment of their own share of taxes, deductions, or withholdings that may be associated with any payment under this Agreement.  Plaintiff is obligated to obtain independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments received pursuant to this Agreement. Nothing in this Agreement shall be construed as Defendant,

Defendant's Counsel, or Plaintiffs' Counsel providing any advice regarding the payment of taxes or the tax consequences of Plaintiff's participation in any portion of this Agreement.

14. **<u>Interpretation and Severability</u>**.  Should any court of competent jurisdiction declare any provision of this Agreement unenforceable, all other provisions of this Agreement shall be unaffected and will remain enforceable.  The Parties agree that this Agreement is subject to and governed by the laws of the State of Pennsylvania and that the exclusive venue of any suit to enforce the terms of this Agreement shall be in the state or federal courts of Pennsylvania.

15. **<u>Amendment</u>**.  This Agreement may not be modified or amended except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

16. **<u>Cooperation and Drafting.</u>**  The Parties have cooperated in the negotiation and preparation of this Agreement.  Accordingly, this Agreement shall not be construed against any Party on the basis that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Agreement.  The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

17. **<u>Counterparts.</u>**  This Agreement may be executed in one or more counterparts, including by email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

18. **Binding On All Parties, Successors and Assigns.**  This Agreement shall be binding upon, and inure to the benefit of all Parties and their heirs, beneficiaries, executors, administrators, successors, transferees, and assigns.

19. **Nullification of Settlement and Agreement.**  In the event: (a) the Court does not approve this Agreement, or the settlement as provided herein, or (b) this Agreement or the settlement as provided herein does not become final for any reason, the settlement and this Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement.  In addition, Defendant retains the right to void the settlement and this Agreement if all Plaintiffs do not accept their settlement offer and timely execute and return their Release Form.


Date: 10/16/2024   By: _Rachhana T. Srey_
Rachhana T. Srey
Nichols Kaster, PLLP
Attorney for Plaintiffs

Date: 10/14/24  By: _B. Pettes_
Brandon Pettes
Sr. Counsel, Legal Dept.
Federal Express Corporation


Date: 11/21/2024   By: _WS_
William Schroeder
Plaintiff

9

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTA B. FISCHER,
Individually and on Behalf of Others
Similarly Situated Employees,

      Plaintiff,

v.                            Case No.: 5:19-cv-04924-JMG

FEDERAL EXPRESS CORPORATION,

      Defendant.

## SETTLEMENT AND RELEASE AGREEMENT

Plaintiff William Sturtevant ("Plaintiff"), and Federal Express Corporation ("FedEx" or "Defendant") (collectively, "Parties") enter into this Settlement and Release Agreement ("Agreement") to resolve a bona fide dispute regarding wages allegedly owed under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("PaWPCL") and asserted in the above styled action (the "Litigation").

This Agreement is one of five individual agreements that collectively form a Global Settlement in this matter. The Global Settlement includes Plaintiff and the four (4) other Plaintiffs who opted in to the above-entitled matter: Christa Fischer (the Named Plaintiff), Randy Fischer, Robert Dunbar, William Sturtevant, and William Schroeder (collectively, "Plaintiffs").

The Parties agree to the following settlement terms:

1.   **Settlement Payment by Defendant.**  In consideration for the promises and
     releases Plaintiffs make in this and the other individual Agreements, Defendant
     will pay a gross total of $825,000.00, inclusive of attorneys' fees and costs (the
     "Global Settlement Amount"). No amount of the Global Settlement Amount will
     revert to Defendant; to the extent any settlement payments are uncashed, the
     Parties agree to work together to redistribute those amounts to Plaintiffs or to a
     suitable *cy pres* recipient. Defendant shall not be required to pay any portion of
     the Settlement Amount, unless and until each of the Plaintiffs have accepted and
     executed their release agreement.

2.   **Allocation and Settlement Offers.**  Plaintiffs' Counsel has calculated a
     reasonable allocation of settlement amounts among all Plaintiffs based upon
     Plaintiffs' damages analysis, which was based on the payroll and employment
     history data provided by Defendant, an assumption of 10 overtime hours per
     week, and each Plaintiff's consent filing date. Assuming the Court approves the
     Global Settlement, the total allocations are as follows:

| Last Name | First Name | Total Damages / Pro Rata Allocation | Named Plaintiff Service Payment | Total Allocation | Share of Attorneys' Fees/ Costs |
|---|---|---|---|---|---|
| Dunbar | Robert | $128,469.37 | | $128,469.37 | $84,506.05 |
| Fischer | Christa | $73,815.38 | $10,000.00 | $83,815.38 | $48,555.13 |
| Fischer | Randy | $237,935.14 | | $237,935.14 | $156,511.70 |
| Schroeder | William | $24,887.33 | | $24,887.33 | $16,370.67 |
| Sturtevant | William | $26,510.71 | | $26,510.71 | $17,438.52 |

3.   **Communication of Settlement Offers**. Plaintiffs' Counsel will distribute
     individualized Settlement Agreement and Release of Claims forms to Plaintiffs.

2

All Plaintiffs will be given five days from the date of distribution to accept their individual settlement offers by signing their settlement agreement.

4. **Method of Payment and Tax Treatment**. Plaintiff will receive the settlement payment via one or two settlement check(s). As close to one half of Plaintiff's Pro Rata Allocation as is administratively possible (using wage payment calculations at a flat rate per workweek will be allocated as wages, and payroll taxes (as well as any other required deductions and contributions associated with a payment of wages) will be withheld from this amount, which will be reported on an IRS Form W-2. The balance of Plaintiff's Pro Rata Allocation shall constitute payment for liquidated damages under the FLSA, and payroll taxes will not be withheld from this amount, which will be reported on an IRS Form 1099-Misc, Box 3. All amounts allocated as attorneys' fees and costs will be paid to Counsel for Plaintiff and will be reported on an IRS Form 1099. Plaintiffs' Counsel shall provide Defendants with an IRS Form W-9 for such payments. All amounts allocated as service payments will be reported on an IRS Form 1099-Misc, Box 3.

5. **Service Payment.** In addition to the individual pro rata settlement allocation, the Parties agree to allocate a service payment in the amount of $10,000.00 to Christa Fischer, the Named Plaintiff, for her time and effort in litigating this case and securing this settlement. As part of the motion for approval, the Parties will ask the Court to approve this service payment. Any portion of the service payment not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

6. **Attorneys' Fees and Costs**. As part of the Global Settlement, Defendant hereby agrees to pay Plaintiffs' Counsel a total of $323,382.07 ("Attorneys' Fees and Costs Payment") in exchange for Plaintiffs' release from any and all liability related to any attorneys' fees and costs incurred by Plaintiffs in this matter. The Attorneys' Fees and Costs Payment resolves all claims for attorneys' fees and costs from Nichols Kaster, Pollins Law, the Law Office of Peter T. Nichol, and Apollo Law; Plaintiffs and Plaintiffs' Counsel jointly and severally represent and warrant to Defendant that there are no attorneys beyond those named here who have claims for fees or costs arising out of the Litigation or the settlement contemplated hereby. Any portion of the attorneys' fees and costs not approved by the Court shall be reallocated and distributed on a pro rata basis to Plaintiffs.

7. **Scope and Effect of the Release**. In exchange for the settlement payment of $26,510.71, Plaintiff knowingly, voluntarily, and completely releases Defendant Federal Express Corporation, and their past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions and successors, and each of their respective agents, employees, owners, members, officers, directors, principals, board members, legal representatives, transferees, assigns and insureds ("Releasees") from any and all claims brought in the Litigation, including for known and unknown overtime compensation, liquidated damages, and interest under the Fair Labor Standards Act, PMWA and PaWPCL arising from Plaintiff's employment with Defendant as a security specialist through the date of Plaintiff's execution of this Agreement.

8. **<u>Fair and Reasonable Compromise</u>**. The Parties agree that this Agreement represents a fair and reasonable compromise of a bona fide dispute regarding Plaintiffs' entitlement to overtime compensation and other relief under the FLSA, the PMWA, and the PaWPCA. The Parties agree to submit this Agreement for Court approval, and agree that the settlement will not become operative until the Court grants approval of it and the settlement becomes effective.

9. **<u>No Admissions.</u>** Defendant denies the allegations in this Litigation and denies it engaged in any wrongdoing or violation of law. Defendant further specifically denies Plaintiffs' claims as to liability and remedies, and expressly reserves the right to challenge all such claims and allegations upon all procedural and substantive grounds, including the assertion of any and all defenses, if the Court does not approve this Agreement. Accordingly, nothing in this settlement or Agreement is intended to be construed as an admission by Defendant that the claims in the Litigation have merit, that Defendant has any liability to the Plaintiffs, or an admission by the Plaintiffs that Defendant's defenses in the Litigation have merit. By entering into this Agreement, none of the Parties admits the allegations or contentions of any other party, and each party is entering into this Agreement for the sole purpose of resolving this matter and avoiding the time and expense incident to further Litigation. Except for purposes of this settlement, neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by Defendant of any fault, wrongdoing or liability whatsoever.

10. **Motion for FLSA Approval and Dismissal of Plaintiffs' Claims**. Within five days of the receipt of all signed Release of Claims forms, the Parties will file a joint motion for approval of FLSA settlement. Plaintiffs' Counsel will draft the motion and provide it and all supporting documents to Defendants in time to allow Defendants five business days to review and discuss any proposed changes. The Parties will work cooperatively to draft and file the motion. Except as set out in Paragraph 11, *infra*, if the Court does not approve any material terms of the settlement as set forth herein, the Parties will work in good faith to conform the terms of the Agreement to resolve the Court's objections. The Parties will jointly request that upon Court approval, the claims of all Plaintiffs shall be dismissed with prejudice, and they shall receive their settlement allocation.

11. **Sealing and Confidentiality.** Plaintiff agrees not to communicate the dollar amounts of their settlement payments to anyone besides immediate family members, tax preparers, financial advisors, or attorneys. Plaintiff shall inform these recipients of the Agreement's confidentiality provisions and shall direct her immediate family members, tax preparers, financial advisors, or attorneys not to disclose the terms of the Agreement beyond disclosures necessary to comply with tax reporting obligations, court orders, administrative orders, subpoenas, or other legal obligations. In response to questions about this Litigation, Plaintiff agrees to only state that the matter has resolved or settled, without disclosing the amount of such settlement. Plaintiffs agree to file the joint motion for FLSA settlement approval with the settlement amounts redacted in both the brief and any accompanying attachments. Defendant will contemporaneously file a motion

requesting to seal those amounts pursuant to Local Rule 5.1.5, which Plaintiffs will not oppose. To the extent the Court denies in whole or in part the motion to seal, or denies approval of the confidentiality provision, such ruling on sealing will not affect the remainder of the Agreement.

12. **Timing of Payment and Check Cashing Period**. Within twenty-one (21) days of the Court granting the motion for approval, Defendant shall provide Plaintiffs' counsel with Plaintiffs' settlement checks via FedEx tracked delivery. Plaintiffs' counsel shall be solely responsible for distributing the settlement amounts to Plaintiffs. Plaintiffs shall have 180 days to cash or otherwise negotiate their checks, at which time they shall be deemed null and void. Likewise, within twenty-one (21) days of the Court's approval, Defendant shall pay the amount of $323,382.07 for Plaintiffs' attorneys' fees and costs via check to Nichols Kaster. Plaintiffs' counsel shall be solely responsible for allocating and distributing the fee and cost amounts.

13. **Tax Obligations**.  Defendant will be solely responsible, separate and apart from the Gross Settlement Amount, for paying the employers' share of any amounts due to any governmental taxing authority because of the settlement payment. Plaintiff and Plaintiffs' Counsel shall be solely responsible for their own tax reporting and payment of their own share of taxes, deductions, or withholdings that may be associated with any payment under this Agreement.  Plaintiff is obligated to obtain independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments received pursuant to this Agreement. Nothing in this Agreement shall be construed as Defendant,

Defendant's Counsel, or Plaintiffs' Counsel providing any advice regarding the payment of taxes or the tax consequences of Plaintiff's participation in any portion of this Agreement.

14. **<u>Interpretation and Severability</u>**.  Should any court of competent jurisdiction declare any provision of this Agreement unenforceable, all other provisions of this Agreement shall be unaffected and will remain enforceable.  The Parties agree that this Agreement is subject to and governed by the laws of the State of Pennsylvania and that the exclusive venue of any suit to enforce the terms of this Agreement shall be in the state or federal courts of Pennsylvania.

15. **<u>Amendment</u>**.  This Agreement may not be modified or amended except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

16. **<u>Cooperation and Drafting.</u>**  The Parties have cooperated in the negotiation and preparation of this Agreement.  Accordingly, this Agreement shall not be construed against any Party on the basis that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Agreement.  The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

17. **<u>Counterparts.</u>**  This Agreement may be executed in one or more counterparts, including by email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

18. **Binding On All Parties, Successors and Assigns.**  This Agreement shall be

    binding upon, and inure to the benefit of all Parties and their heirs, beneficiaries,

    executors, administrators, successors, transferees, and assigns.

19. **Nullification of Settlement and Agreement.**  In the event: (a) the Court does not

    approve this Agreement, or the settlement as provided herein, or (b) this

    Agreement or the settlement as provided herein does not become final for any

    reason, the settlement and this Agreement shall be null and void and the Parties

    shall be returned to their respective statuses as of the date immediately prior to the

    execution of this Agreement.  In addition, Defendant retains the right to void the

    settlement and this Agreement if all Plaintiffs do not accept their settlement offer

    and timely execute and return their Release Form.


Date: 10/16/2024  By: _Rachhana T. Srey_
Rachhana T. Srey
Nichols Kaster, PLLP
Attorney for Plaintiffs

Date: 10/14/24 By: _B. Pettes_
Brandon Pettes
Sr. Counsel, Legal Dept.
Federal Express Corporation


Date: 10/15/2024  By: _W.S. Sturtevant_
William Sturtevant
Plaintiff